1   Mary E. McAlister
2   California Bar Number 148570
3   Liberty Counsel
4   P.O. Box 11108
5   Lynchburg, VA 24506
6   (434) 592-7000 (telephone)
7   (434) 592-7700 (facsimile)
8   court@lc.org Email
9   Attorney for Plaintiffs
10
11
12                  UNITED STATES DISTRICT COURT
13                  EASTERN DISTRICT OF CALIFORNIA
14                       SACRAMENTO DIVISION
15
16   DAVID PICKUP, CHRISTOPHER H.
17   ROSIK, PH.D., JOSEPH NICOLOSI, PH.D,
18   ROBERT VAZZO, NATIONAL ASSOCIATION FOR
19   RESEARCH AND THERAPY OF HOMOSEXUALITY
20   (NARTH), AMERICAN ASSOCIATION OF CHRISTIAN
21   COUNSELORS (AACC), JOHN DOE 1, by and through JACK
22   AND JANE DOE 1, JACK DOE 1, individually, and
23   JANE DOE 1, individually,
24   JOHN DOE 2, by and through JACK
25   AND JANE DOE 2, JACK DOE 2, individually, and
26   JANE DOE 2, individually
27
28                                                   Case No.:_____
29              Plaintiffs
30        v.                                          Complaint
31
32   EDMUND G. BROWN, Jr., Governor of the State
33   of California, *in his official capacity*, ANNA
34   M. CABALLERO, Secretary of the California
35   State and Consumer Services Agency, *in her*
36   *official capacity*, KIM MADSEN, Executive
37   Officer of the California Board of Behavioral
38   Sciences, *in her official capacity*, MICHAEL
39   ERICKSON, PH.D, President of the California
40   Board of Psychology, *in his official capacity*;
41   SHARON LEVINE, President of the Medical
42   Board of California,
43   *in her official capacity*.
44
45              Defendants.


              Complaint for Declaratory Judgment, Injunctive Relief and Nominal Damages - 1

**COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND NOMINAL DAMAGES**

Come now Plaintiffs, DAVID PICKUP, CHRISTOPHER H. ROSICK, PH.D., ROBERT VAZZO, JOSPEH NICOLOSI, PH.D., NATIONAL ASSOCIATION FOR RESEARCH AND THERAPY OF HOMOSEXUALITY (NARTH), the AMERICAN ASSOCIATION OF CHRISTIAN COUNSELORS (AACC), JOHN DOE 1, by and through JACK and JANE DOE 1, JACK DOE 1, individually, JOHN DOE 2, by and through JACK AND JANE DOE 2, JACK DOE 2, individually, and JANE DOE 2, individually ("Plaintiffs"),  by and through their undersigned counsel, and file this civil action to respectfully request this Court to issue Injunctive and Declaratory Relief and award nominal Damages for constitutional violations described below. In support, Plaintiffs aver unto the Court as follows:

**INTRODUCTION**

1.      Plaintiffs bring this civil action to prevent newly passed California Business and Professions Code §§ 865, 865.1, 865.2 ("SB 1172") from violating their respective federal and state constitutional guarantees of Freedom of Speech, Free Exercise of Religion, and the fundamental right to direct the upbringing of one's child. **This law goes into full effect January 1, 2013, and thus time is of the essence to obtain judicial relief because Plaintiffs, and the members of the associations, face irreparable harm.**

2.      Plaintiffs Jack and Jane Doe 1, and Jack and Jane DOE 2, have the fundamental right, as parents, to direct the upbringing and education of their children, Plaintiff John Doe 1, and Plaintiff John DOE 2, respectively, and to do so free from unconstitutional government interference, and have the First Amendment and state constitutional rights as parents to engage in constitutionally protected speech and religious freedom, including the right to receive information and to provide information to their children.

3.        Plaintiffs John Doe 1 and John DOE 2, have First Amendment and state constitutional rights as minors to engage in constitutionally protected speech and religious freedom, and the right not only to speak, but also to receive information.

4.        Plaintiffs David Pickup, Dr. Joseph Nicolosi, Dr. Christopher Rosik, Robert Vazzo, and other NARTH members in and outside of California as well as AACC members in and outside of California who either engage in or refer to someone who do engage in counseling that honors a client's autonomy and right to self-determination to prioritize and their religious and moral values above unwanted same-sex sexual attractions and who want to align their values with a counselor who can address these values, have the First Amendment and state constitutional rights as counselors, to engage in constitutionally protected speech and religious freedom, which includes their clients' right of self-determination, their right to provide and receive counsel based on their religious and moral values, and their right to counsel their clients without governmentally imposed and unconstitutional viewpoint-based restrictions.

5.        SB 1172 denies Plaintiffs John Doe 1 and John DOE 2, as well as all other minors in California their right to self-determination, their right to prioritize their religious and moral values, and their right to receive counseling consistent with those values, by preventing them from seeking counseling to address the conflict and confusion about or questions concerning their unwanted same-sex sexual attractions and to seek to reduce or eliminate their unwanted same-sex sexual attractions, including but not limited to sexual orientation change efforts (SOCE).

6.        By denying Plaintiffs and all minors access to counseling that can help minors who desire to reduce or eliminate their unwanted same-sex attractions, SB 1172 infringes on the fundamental rights of Jack and Jane Doe 1,  and Jack and Jane DOE 2 to direct the upbringing

1    and education of their children, which includes the right to meet each child's individual

2    counseling, developmental, and spiritual needs.

3    7.      SB 1172 violates the constitutional rights of mental health providers and

4    counselors, including Plaintiffs Mr. Pickup, Dr. Rosik, Dr. Nicolosi, Mr. Vazzo, other NARTH

5    members and AACC members in and outside of California who practice SOCE counseling, or

6    who refer to someone who does practice SCOE, by prohibiting them from engaging in any

7    efforts that seek to eliminate or reduce the unwanted same-sex attractions even when the client,

8    the parents, and the psychotherapist all consent to the counseling and therapeutic intervention.

9    8.      Despite the value and benefit that Plaintiffs have experienced by receiving SOCE

10   and/or have prompted by offering SOCE, the Defendants have passed and will enforce SB 1172

11   to stop all SOCE, causing immediate and irreparable harm to all Plaintiffs, including the

12   counselors and their clients represented by the associational Plaintiffs.

13   9.      SB 1172 harms minors, their parents/guardians, and counselors by prohibiting

14   minors and their parents/guardians from obtaining the counseling services they choose, after

15   receiving full disclosure and providing informed consent, to resolve or reduce unwanted same-

16   sex sexual attractions; by prohibiting counselors from providing help requested by their clients to

17   those clients and by placing counselors in a Catch-22 in which they will be forced to choose

18   between violating ethical codes by complying with SB 1172 or violating ethical codes by failing

19   to comply with SB 1172.

20   10.     By denying minors the opportunity to pursue a particular course of action that can

21   help them address the conflicts between their religious and moral values and same-sex attractions,

22   the law has and will cause those minors confusion and anxiety over same-sex sexual attractions

1    that the minor must balance, resolve, and/or eliminate with respect to their religious and moral

2    values, and infringe on their free speech and religious liberty rights.

3        11.    Consequently, Plaintiffs seek Preliminary and Permanent Injunctive Relief

4    enjoining Defendants from enforcing SB 1172 because it violates: (1) the Plaintiffs' rights to

5    freedom of speech and free exercise of religion, guaranteed by the First and Fourteenth

6    Amendments to the United States Constitution, and (2) Plaintiffs' rights to liberty of speech and

7    free exercise and enjoyment of religion, guaranteed by Article I, §§ 2(a), 4 of the California

8    Constitution.

9        12.    Plaintiffs also seek Declaratory relief from this Court declaring that SB 1172 is

10   unconstitutional on its face and as applied

11                              **JURISDICTION AND VENUE**

12       13.    This action arises under the First and Fourteenth Amendments to the United

13   States Constitution, 42 U.S.C. § 1983, and Article I, §§ 2(a), 4 of the California Constitution.

14       14.    This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1343, 1367,

15   and 2201-02.

16       15.    This Court is authorized to grant the Plaintiffs' prayer for relief regarding costs,

17   including reasonable attorney's fees under 42 U.S.C. § 1988.

18       16.    This Court is authorized to grant Declaratory Judgment under the Declaratory

19   Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Federal Rule of Civil Procedure 57,

20   and to issue the Preliminary and Permanent Injunctive Relief under Federal Rule of Civil

21   Procedure 65.

22       17.    Venue is proper under 28 U.S.C. § 1391(b). Each and all of the acts alleged herein

23   were done and are to be done by Defendants, and each of them, not as individuals, but under the

1    color and pretense of statutes, ordinances, regulations, customs, and uses of the United States of

2    America and of the State of California.

**PARTIES**

**Plaintiffs**

5    18.       Plaintiffs Jack and Jane Doe 1, both individually and on behalf of John Doe 1, are

6    residents of the State of California and are the parents of John Doe 1, a minor who is 15 years of

7    age who is receiving counseling from one of the named Plaintiff counselors.

8    19.       Plaintiffs Jack and Jane DOE 2, both individually and on behalf of John DOE 2,

9    are residents of the State of California and are the parents of John DOE 2, a minor who is 14

10   years old who is receiving counseling from one of the names Plaintiff counselors.

11   20.       Plaintiff David H. Pickup is a California Licensed Marriage and Family Therapist.

12   21.       Plaintiff, Christopher H. Rosick, Ph.D., is a licensed and practicing clinical

13   psychologist licensed under the laws of California, professor of psychology, and the President of

14   NARTH.

15   22.       Plaintiff Joseph Nicolosi, Ph.D. is clinical psychologist licensed in the State of

16   California and is the Founder and Clinical Director of Thomas Aquinas Psychologists Clinic in

17   Encino, California.

18   23.       Plaintiff Robert Vazzo is a California Licensed Marriage and Family Therapist.

19   24.       Plaintiff Joseph Nicolosi, Ph.D. is clinical psychologist licensed in the State of

20   California and is the Founder and Clinical Director of Thomas Aquinas Psychologists Clinic in

21   Encino, California.

22   25.       Plaintiff National Association For Research and Therapy of Homosexuality

23   ("NARTH"), is a nonprofit, professional, scientific organization incorporated under the laws of

the State of Utah. NARTH has a branch office in Los Angeles, California and embers who reside and practice in California, and also has members outside of California, some of whom are licensed in California.

26.        Plaintiff American Association of Christian Counselors ("AACC") is a nonprofit professional, scientific association, founded in 1989 and headquartered in the Commonwealth of Virginia with 50,000 members located in California and throughout the world. AACS's clinical members include Licensed Professional Counselors, Licensed Mental Health Counselors, Licensed Marriage & Family Therapists, Licensed Clinical Social Workers, Licensed Clinical Psychologists, Licensed Substance Abuse Treatment Providers, Clinical Nurse Specialists, and Psychiatrists.

### Defendants

27.        Defendant Edmund G. Brown, Jr. is Governor of the State of California and responsible for executing the laws of California.

28.        Defendant Anna M. Caballero is Secretary of the State and Consumer Services Agency of the State of California and responsible for overseeing the departments charged with civil rights enforcement, consumer protection, and licensure for California's working professionals.

29.        Defendant Kim Madsen is the Executive Officer of the California Board of Behavior Sciences, which is responsible for the licensing, examination, and enforcement of licensed marriage and family therapists, licensed clinical social workers, licensed educational psychologists, and licensed professional clinical counselors.

30.     Defendant Dr. Michael Erickson, Ph.D. is the President of the California Board of Psychology, which is responsible for licensing and regulating psychologists, psychological assistants, and registered psychologists.

31.     Defendant Sharon Levine is the President of the Medical Board of California, which is responsible for licensing and regulating medical doctors, including psychiatrists.

## GENERAL FACTUAL ALLEGATIONS

32.     Following the California Legislature's passage of SB 1172, Defendant Governor Brown signed it into law on or about September 29, 2012 as California Business and Professions Code §§ 865, 865.1, 865.2, and **the law goes into effect on January 1, 2013**. SB 1172 is attached to this Complaint as Exhibit A.

33.     Section 865.1 states, "Under no circumstances shall a mental health provider engage in sexual orientation change efforts with a patient under 18 years of age."

34.     Section 865(b) states:

(1) "Sexual orientation change efforts" means any practices by mental health providers that seek to change an individual's sexual orientation. This includes efforts to change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings towards individuals of the same sex

(2) "Sexual orientation change efforts" does not include psychotherapies that : (A) provide acceptance, support, and understanding of clients or the facilitation of clients' coping, social support, and understanding and identity interventions to prevent or address unlawful conduct or unsafe sexual practices, and (B) do not seek to change sexual orientation.

35.     Section 865 defines mental health providers as:

a physician and surgeon specializing in the practice of psychiatry, a psychologist, a psychological assistant, intern, or trainee, a licensed marriage and family therapist, a registered marriage and family therapist, intern, or trainee, a licensed educational psychologist, a credentialed school psychologist, a licensed clinical social worker, an associate clinical social worker, a licensed professional clinical counselor, a registered clinical counselor, intern, or trainee, or any other person designated as a mental health professional under California law or regulation.

36.     Section 865.2 states, "Any sexual orientation change efforts attempted on a patient under 18 years of age by a mental health provider shall be considered unprofessional conduct and shall subject a mental health provider to discipline by the licensing entity for that mental health provider."

37.     General Principle E of the American Psychological Association's "<u>Ethical Principles of Psychologists and Code of Conduct</u>" ("APA Code") includes the following: "Psychologists respect the dignity and worth of all people, and the rights of individuals to privacy, confidentiality, and **self-determination**." (emphasis added.)

38.     SB 1172 directly interferes with John Doe 1's and John DOE 2's rights to self-determination, and the right of their parents to determine the upbringing and education of their minor children, including the well-being of their spiritual needs.

39.     Section 3.04 of the American APA Code, "Avoiding Harm," further states, "Psychologists take reasonable steps to avoid harming their clients/patients . . . and to minimize harm where it is foreseeable and unavoidable."

40.     Because the APA Code already prohibits harming patients, SB 1172 is unnecessary and evidences an obvious attempt to suppress the viewpoints of those who seek, who offer, or who refer to someone to provide SOCE or other spiritual or value-based counseling.

41.     Section 1(a) of the <u>American Psychiatric Association Guidelines for Ethical Treatment</u> ("APA Guidelines") states, "A psychiatrist shall not withhold information that the patient needs or reasonably could use to make informed treatment decisions, including options for treatment not provided by the psychiatrist.

42.     SB 1172 mandates psychiatrists to violate Section 1(a) of the APA Guidelines by forcing them to withhold information that a patient reasonably could use to make informed treatment decisions.

43.     By mandating that SOCE treatment options not be discussed or engaged in by licensed psychiatrists, or even make referrals to, patients will not be able to make informed treatment decisions, and the psychiatrists will be violating the ethical code imposing their own views and value judgments upon their clients.

44.     Section 1(c) of the APA Guidelines states, "A psychiatrist shall strive to provide beneficial treatment that shall not be limited to minimum criteria of medical necessity."

45.     SB 1172 mandates that psychiatrists violate Section 1(c) of the APA Guidelines by prohibiting them from providing beneficial SOCE treatment to those patients who willingly consent to and desire such treatment to alleviate their unwanted same-sex sexual attractions.

46.     Opinion 10.01(2) of the American Medical Association Code of Ethics ("AMA Code") states, "The patient has the right to make decisions regarding the health care that is recommended by his or her physician. Accordingly, patients may accept or refuse **any** recommended medical treatment." (emphasis added).

47.     SB 1172 requires that medical professionals violate this provision of the code of ethics by prohibiting them from allowing patients to make any decision regarding the availability and benefits of SOCE treatment.

48.     SB 1172 prohibits patients from being able to accept or reject SOCE treatment, even though the fundamental elements of the patient-physician relationship require that the patient be provided with the full range of treatment and counseling options.

49.  Opinion 10.016 of the AMA Code states, "Medical decision-making for pediatric patients should be based on the child's best interest, which is determined by weighing many factors, including effectiveness of appropriate medical therapies, the patient's psychological and emotional welfare, and the family situation. When there is legitimate inability to reach consensus about what is in the best interest of the child, the wishes of the parents should generally receive preference."

50.  SB 1172 forces physicians to violate this Opinion by removing certain treatment and counseling options from the wishes of the parents  and their minor children.

51.  SB 1172 prohibits parents from even having the option to consider whether SOCE treatment is in the best interest of their child.

52.  Section A.2.d of the <u>American Counselor's Association Code of Ethics</u> ("ACA Code") states, "When counseling minors or persons unable to give voluntary consent, counselors seek the assent of clients to services, and include them in decision-making as appropriate. Counselors recognize the need to balance the ethical rights of clients to make choices, their capacity to give consent or assent to receive services, and parental or familial legal rights and responsibilities to protect those clients and make decisions on their behalf."

53.  Section B.5.b of the ACA Code states, "Counselors are sensitive to the cultural diversity of families and respect the inherent rights and responsibilities of parents/guardians over the welfare of their children."

54.  SB 1172 forces counselors to violate Sections A.2.d and B.5.b by prohibiting them from respecting the rights of the parents/guardians to make the decisions concerning the welfare of their child and minors from self-determination.

55.        Section A.4.a of the ACA Code states, "Counselors act to avoid harming their clients, trainees, and research participation and to minimize or to remedy unavoidable or unanticipated harm."

56.        SB 1172 is unnecessary to prevent counselors from harming their minor clients because it is already prohibited.

57.        Indeed, the prohibition on SOCE makes it impossible for mental health providers and counselors to follow the ACA Code's directive to avoid harming their clients when a minor client who desires the now-prohibited SOCE counseling is unable to determine their own course of counseling that aligns tithe their spiritual and moral values.

58.        Principle 1.2 of the <u>American Association of Marriage and Family Therapists Code of Ethics</u> ("AAMFT Code") provides that all licensed Marriage and Family Therapists obtain informed consent from their clients, which generally requires that the client "has been adequately informed of significant information concerning treatment processes and procedures."

59.        SB 1172 prohibits Licensed Marriage and Family Therapists from informing their minor clients about an entire course of treatment—SOCE counseling—that might benefit them and help them achieves their goals of eliminating or reducing their unwanted same-sex attractions.

60.        Principle 1.8 of the AAMFT Code provides that licensed marriage and family therapists "respect the rights of clients to make decisions."

61.        SB 1172 will prohibit California Licensed Marriage and Family Therapists from respecting the rights of clients to make the decisions because the State already made the decision for the client—i.e., no one under the age of eighteen can receive SOCE counseling.

62.     Because the State has made the decision for the client, Plaintiffs are hopelessly conflicted between compliance with SB 1172 and compliance with Principle 1.8 of the AAMFT Code and other relevant codes.

63.     Section 1.01 of Code of Ethics of the National Association of Social Workers ("NASW Code") states that it is a social worker's primary responsibility to promote the well-being of their clients.

64.     SB 1172 is purported to advance the compelling interest of protecting children, but it is unnecessary as social workers must already act to the promotion of their client's best interest.

65.     Section 1.02 of the NASW Code provides that the clients shall have the right to self-determination and that a social worker should only seek to assist the client in achieving their goals.

66.     SB 1172 prohibits California social workers from respecting the rights of the client to self-determination by imposing the State's determination on the course of their therapy and mandating that only efforts that seek to affirm same-sex attractions are permissible in the counselor's office even if this collides with the client's religious and moral values.

67.     Section 1.03 of the NASW Code provides that social workers must provide sufficient information for the client to make an informed decision about their course of care and specifically states that such informed consent must include a discussion of *reasonable alternatives*.

68.     SB 1172 prohibits any efforts that seek to eliminate or reduce same-sex attractions, so it prohibits the social worker from also providing information to clients about the reasonable alternative available to those clients who desire SOCE counseling.

69.      Because SB 1172 requires social workers to either violate the existing provisions of the NASW Code or violate SB 1172, social workers in California are hopelessly condemned to lose their license for ethical violations regardless of what they do.

70.      The Orange County Register reports that State Senator Ted Lieu, the floor sponsor of Senate Bill 1172, said, "The attack on parental rights is exactly the whole point of the bill because we don't want to let parents harm their children." Kim Reyes, *Controversy Follows Effort to Ban Gay Conversion Therapy*, Orange County Register, (July 27, 2012; updated Aug. 2, 2012, 4:09 p.m.), < http://www.ocregister.com/news/therapy-365822-parents-orientation.html>.

71.      Senator Lieu's statements, when combined with the fact that the AMA Code, the APA Code, the APA Guidelines, the ACA Code, AAMFT Code, and the NASW Code all prohibit harming children already, reveals that the purpose of SB 1172 is to silence the viewpoint of those who believe SOCE treatment is a legitimate counseling therapy and can provide tremendous benefits to minors.

72.      Senator Lieu's statements also reveal that the intent of the SOCE prohibition is to restrict the fundamental rights of parents to direct the upbringing and education of their children.

73.      In the professional opinion of the Therapist Plaintiffs, cutting off SOCE counseling and information to minors that might reduce or eliminate their unwanted same-sex sexual attractions, or to otherwise address the conflicts between their same-sex sexual attractions and their religious and moral values is harmful to minors, their parents/guardians, and to counselors who seek to honor the self-determination of their clients and who seek to provide spiritual counseling to those who seek it.

**Jack, Jane, and John Doe 1**

Complaint for Declaratory Judgment, Injunctive Relief and Nominal Damages - 14

74.      John Doe 1, the son of Jack and Jane Doe 1, is 15 years old, and they are adherents to the Roman Catholic faith.

75.      John Doe 1 has struggled with undesired confusion over sexual orientation, which has manifested itself as same-sex attractions.

76.      Concerned for John Doe 1's mental well-being regarding his confusion over sexual orientation and his undesired same-sex attractions, Mr. and Mrs. Doe 1, as caring, responsible parents, sought mental health treatment for their son.

77.      To alleviate and remediate his undesired same-sex attractions, John Doe 1 and his parents sought treatment from Plaintiff Dr. Nicolosi a year and a half ago.

78.      Dr. Joseph Nicolosi recommended the option of SOCE counseling that incorporated Christian principles to John Doe 1 and his parents.

79.      John Doe 1 and his parents consented to the SOCE treatment recommended by Dr. Nicolosi and did so based on substantial, detailed information provided by Dr. Nicolosi.

80.      At the request of their son, Doe 1, Mr. and Mrs. Doe 1 entered into an agreement with Dr. Nicolosi for the SOCE treatment and paid for John Doe 1's therapy treatments with Dr. Nicolosi.

81.      John Doe has received SOCE counseling for a year and a half.

82.      Because of Dr. Nicolosi's SOCE counseling, John Doe 1 has stated that his mental well-being has improved significantly.

83.      John Doe 1 attests that the SOCE counseling provided by Dr. Nicolosi helped to resolve his issues with same-sex attractions.

84.      John Doe 1 attests that the SOCE counseling provided by Dr. Nicolosi made him feel more secure in his male gender identity, which was his goal in receiving the treatment.

85.      John Doe 1 attests that the SOCE counseling provided by Dr. Nicolosi allowed him to experience his needs for healthy male love, affirmation, approval, and affection without connecting them with unwanted same-sex attractions.

86.      John Doe 1 attests that the SOCE counseling provided by Dr. Nicolosi substantially decreased and dissipated his unwanted same-sex feelings while increasing his attractions for women.

87.      While John Doe 1 is still dealing with residual issues from his same-sex attractions, he and his parents are very pleased with the real and major changes in John Doe 1's sexuality as a result of Dr. Nicolosi's therapy treatments.

88.      Despite this positive outcome, SB 1172 will prohibit John Doe 1 from seeking any further SOCE counseling until he turns eighteen years old.

89.      SB 1172 deprives John Doe 1 of his right to seek the therapy and counseling that he needs and desires.

90.      SB 1172 will directly infringe upon John Doe 1's fundamental right to self-determination.

91.      SB 1172 has infringed John Doe 1's constitutional right to receive information, which is protected by the First Amendment.

92.      SB 1172 has infringed John Doe 1's right to free exercise of religion.

93.      SB 1172 has infringed Mr. and Mrs. Doe 1's constitutionally protected rights to free exercise of religion.

94.      SB 1172 has infringed Mr. and Mrs. Doe 1's fundamental parental rights to direct the upbringing and education of their son.

95.      SB 1172 has inflicted and will continue to inflict irreparable harm on John Doe 1, and also on John Doe 1's parents, Jack and Jane Doe 1.

96.      John Doe 1 wishes to continue his SOCE counseling in order to continue his substantial progress in removing his unwanted same-sex attractions.

97.      John Doe believes that failure to continue to receive his SOCE counseling will cause a regression in his progress and cause him mental anguish, anxiety, and depression to return

**Jack, Jane, and John DOE 2**

98. John DOE 2, the son of Jack and Jane DOE 2, is 14 years old. Jake DOE 2 is Muslim, Jane DOE 2 is a Roman Catholic, and John DOE 2 partakes of both faiths.

99.      John DOE 2 struggled with undesired confusion over sexual orientation.

100.          Concerned for John DOE 2's mental well-being regarding his confusion over sexual orientation,, Mr. and Mrs. DOE 2, as caring, responsible parents, sought mental health treatment for their son.

101.      To a address John DOE 2's undesired confusion regarding sexual orientation, John DOE 2 and his parents sought treatment from Plaintiff Dr. Nicolosi.

102.      Dr. Joseph Nicolosi recommended the option of SOCE counseling to John DOE 2 and his parents.

103.      John DOE 2 and his parents consented to the SOCE treatment recommended by Dr. Nicolosi and did so based on substantial, detailed information provided by Dr. Nicolosi.

104.      At the request of their son, John DOE 2, Mr. and Mrs. DOE 2 entered into an agreement with Dr. Nicolosi for the SOCE treatment and paid for therapy treatments with Dr. Nicolosi.

1    105.    The DOE 2 family has received SOCE counseling for three and one half  months

2    106.    Because of Dr. Nicolosi's SOCE counseling, the DOE 2 family has become closer

3    and exhibited a greater degree of family unity.

4    107.    Despite this positive outcome, SB 1172 will prohibit John DOE 2 from receiving

5    any further SOCE counseling until he turns eighteen years old.

6    108.    SB 1172 deprives John DOE 2 of his right to seek the therapy and counseling that

7    he needs and desires.

8    109.    SB 1172 will directly infringe upon John DOE 2's fundamental right to self-

9    determination.

10    110.    SB 1172 has infringed John DOE 2's constitutional right to receive information,

11    which is protected by the First Amendment.

12    111.    SB 1172 has infringed John DOE 2's right to free exercise of religion.

13    112.    SB 1172 has infringed Mr. and Mrs. DOE 2's constitutionally protected rights to

14    free exercise of religion.

15    113.    SB 1172 has infringed Mr. and Mrs. DOE 2's fundamental parental rights to

16    direct the upbringing and education of their son.

17    114.    SB 1172 has inflicted and will continue to inflict irreparable harm on John DOE 2,

18    and also on John DOE 2's parents, Jack and Jane DOE 2.

19    115.    John DOE 2 wishes to continue his SOCE counseling.

20                                    **David H. Pickup**

21    116.    David H. Pickup, a California resident, earned his Master of Arts in Counseling

22    Psychology from National University in Los Angeles and interned in SOCE counseling under the

23    direction of Dr. Joseph Nicolosi at the Thomas Aquinas Psychological Clinic in Los Angeles.

117.     Mr. Pickup is a California Licensed Marriage and Family Therapist who specializes in SOCE counseling.

118.     Mr. Pickup is currently a member of NARTH, the California Association of Marriage and Family Therapists, the American Association of Christian Counselors, and the International Institute of Reorientation Therapies where he currently serves as President.

119.     Mr. Pickup is also an associate member of the American Psychological Association.

120.     As a psychotherapist who specializes in SOCE counseling, Mr. Pickup regularly counsels minor clients experiencing same-sex attractions..

121.     Mr. Pickup respects the desires and directives of all of his clients, including those who are minors.

122.     Without forcing his beliefs or ideology on any of his clients, part of Mr. Pickup's inquiry into the client's goals is to find out whether the client desires SOCE counseling.

123.     Mr. Pickup uses SOCE counseling only if the minor client desires the treatment and has given informed consent.

124.     Many of Mr. Pickup's minor clients assert that abuse, trauma, neglect, and unfulfilled gender-identity needs caused their unwanted same-sex attractions.

125.     Most of Mr. Pickup's minor clients come from the Christian faith and request Christian counseling, which Mr. Pickup readily provides, as a part of their therapy to help them move away from their unwanted same-sex attractions.

126.     Mr. Pickup has been able to successfully counsel minor clients desiring to remediate their unwanted same-sex attractions and his SOCE treatment has helped many of these

1    minor clients reduce their unwanted same-sex attractions, alleviate their mental anguish and

2    anxiety, and increase security in their gender identity.

3    127.     Mr. Pickup is passionate about helping minor clients with undesired same-sex

4    attractions because of his own personal mental sufferings and experiences as a minor and the

5    successful SOCE counseling that he received.

6    128.     As a five year-old boy, Mr. Pickup was sexually molested by a male high school

7    perpetrator at least two to three times.

8    129.     Mr. Pickup considers this abuse to be a significant cause (if not the most

9    significant cause) of subsequent homosexual feelings and same-sex attractions when he reached

10   puberty.

11   130.     As an adult, Mr. Pickup underwent authentic SOCE counseling, created by Dr.

12   Joseph Nicolosi, for several years.

13   131.     Mr. Pickup reports that he was never coerced into such therapy and never shamed

14   during the therapy.

15   132.     SOCE counseling helped Mr. Pickup resolve any shame for having homosexual

16   feelings.

17   133.     SOCE counseling helped Mr. Pickup greatly decrease his depression and anxiety..

18   134.     SOCE counseling helped Mr. Pickup feel secure in his male gender identity and

19   understand his needs for healthy male love, affirmation, approval and affection.

20   135.     SOCE counseling helped Mr. Pickup substantially lessen and dissipate his

21   homosexual feelings and significantly increasing his attractions towards women.

136.     While Mr. Pickup's journey to complete recovery is ongoing, he is very happy with the real and major change in his sexuality that occurred as a result of the SOCE counseling that he received.

137.     Mr. Pickup believes that SOCE counseling saved his life.

138.     Mr. Pickup is suffering and will continue to suffer irreparable harm as a result of SB 1172. He will be forced to violate the codes of ethics no matter what he does with respect to clients seeking counseling to reduce or resolve same-sex sexual attractions.

139.     By prohibiting minors from receiving SOCE counseling, SB 1172 has made a substantial portion of Mr. Pickup's practice illegal.

140.     SB 1172 will prohibit Mr. Pickup from continuing any SOCE counseling with his current minor clients.

141.     SB 1172 also forces Mr. Pickup to violate the requirements the ethical code because if he complies with SB 1172, he will violate the code of ethics, and if he does not comply and engages in SOCE counseling or refers to someone who does, he violates SB 1172.

142.     In addition to ruining his practice, SB 1172 infringes on Mr. Pickup's constitutionally protected right to freedom of speech, forcing him to express only one viewpoint on the same-sexual sexual attractions and SOCE..

143.     SB 1172 prohibits Mr. Pickup from sharing valuable personal life experiences that change is possible with clients.

144.     SB 1172 prohibits Mr. Pickup from speaking about the potential benefits of SOCE counseling and that he successfully alleviated his unwanted same-sex attractions.

145.     SB 1172 will also substantially interfere with Mr. Pickup's therapist-patient relationship by prohibiting him from counseling consenting minor patients according to his sincerely-held religious beliefs.

**Christopher H. Rosick, Ph.D.**

146.     Christopher H Rosick, Ph.D., a California resident, is a Phi Beta Kappa graduate of the University of Oregon's honors college where he received a Bachelor of Arts degree in psychology.

147.     As an undergraduate, Dr. Rosick also studied at the University of Copenhagen, Denmark.

148.     Dr. Rosick received a Master of Arts degree in Theological Studies from Fuller Theological Seminary and a Ph.D. in Clinical Psychology from the Fuller Graduate School of Psychology.

149.     Since 1988, Dr. Rosick has been licensed in California as a Clinical Psychologist and practices psychology at the Link Care Center, a religious, nonprofit foundation, in Fresno, California.

150.     Since 2001, Dr. Rosick has also been on the clinical faculty of Fresno Pacific University where he teaches a psychology research practicum each year for undergraduate students.

151.     Dr. Rosick has published over forty scholarly articles and book chapters in peer-reviewed journals, many on the subject of homosexuality and same-sex attractions.

152.     Dr. Rosick has been a member in good standing with the American Psychological Association since 1984 and with the International Society for the Study of Trauma and Dissociation since 1992.

153.     Since 1986, Dr. Rosick has been a member of the Christian Association for Psychological Studies ("CAPS") where he served on the board of directors from 1990-1993 and served as the CAPS President-Elect, President, and Past-President from 2001-2005.

154.     Dr. Rosick has also been a member of NARTH since 1999 where he has served as the NARTH President-Elect in 2011 and is currently the NARTH President.

155.     Dr. Rosick works full time as a psychologist at Link Care, working primarily with adolescents, adults, and couples.

156.     Dr. Rosick currently carries a caseload of approximately twenty-five to thirty clients per week.

157.     At any point in time, approximately 5-10 percent of Dr. Rosick's caseload involves clients who are reporting same-sex attractions.

158.     Of that percentage, about half of those clients are minors struggling with same-sex attractions.

159.     For minor clients experiencing same-sex attractions, Dr. Rosick conscientiously seeks to obtain and understand their goals for their treatment.

160.     Without forcing his beliefs or ideology on any of his clients, part of Dr. Rosick's inquiry into the client's goals is to find out whether the client desires SOCE counseling.

161.     If the parents of the minor client have differing treatment goals and desires for their child, Dr. Rosick still follows the wishes of the minor client.

162.     If a minor client declines SOCE counseling, Dr. Rosick's treatment will often focus on helping the parents understand their child's thinking, providing psycho-education about homosexuality among youth, and working within the parents' typical religious values and belief system to encourage parents to love their child and keep the lines of communication open.

163.     Dr. Rosick believes that helping these parents love their child while valuing their own sincerely-held religious beliefs is a key intervention that is unique to therapists like him and is what SB 1172 seeks to prohibit.

164.     If a minor client and his or her parents both express a desire for SOCE counseling, then Dr. Rosick provides advanced informed consent.

165.     Dr. Rosick's advanced informed consent documents the controversies surrounding this practice and details the nature of the controversies.

166.     Dr. Rosick's advanced informed consent also explains his therapeutic approach, possible contributing factors to the origin of same-sex attractions, potential benefits and risks of SOCE treatment, and options for sexual identity formation.

167.     Dr. Rosick's advanced informed consent addresses the ethical mandate for informed consent in a controversial area of practice, which facilitates autonomous client decision-making and helps ensure that minor clients (at least adolescents) and their parents are pursuing a self-determined course of psychological care with goals consistent with their values and desires.

168.     Dr. Rosick has suffered and will continue to suffer irreparable harm as a result of SB 1172.

169.     By prohibiting minors from receiving SOCE counseling, SB 1172 has made a portion of Dr. Rosick's practice illegal.

170.     SB 1172 will prevent Dr. Rosick's clients from continuing to progress in their individually determined course of treatment.

171.     SB 1172 also forces Dr. Rosick to violate the requirements APA Code because if he complies with SB 1172, he will violate the code of ethics, and if he does not comply and engages in SOCE counseling or refers to someone who does, he violates SB 1172.

**Joseph Nicolosi, Ph.D.**

172.     Dr. Joseph Nicolosi is a licensed psychologist in the State of California with a Ph.D. in Clinical Psychology from the California School of Professional Psychology.

173.     Dr. Nicolosi has performed extensive research on the topics of homosexuality and SOCE counseling.

174.     Dr. Nicolosi has published numerous scholarly articles, books, and other scholarly works on SOCE counseling.

175.     Dr. Nicolosi specializes in the treatment and counseling of males who struggle with unwanted same-sex attractions.

176.     Prior to engaging in any SOCE counseling with a patient, Dr. Nicolosi provides his patients with extensive information concerning the nature of SOCE counseling, its controversial nature, and discusses the fact that some psychotherapists believe that sexual orientation cannot and should not be changed.

177.     Dr. Nicolosi explicitly informs his clients that he does not engage in homosexual affirming therapy and tells them that they should seek new counseling if their treatment goals change such that they want to continue in their homosexual lifestyle.

178.     Most of Dr. Nicolosi's patients with unwanted same-sex attractions seek to develop healthy heterosexual relationships and a reduction in their unwanted same-sex attractions.

179.     Dr. Nicolosi has had numerous clients succeed in eliminating or reducing their unwanted same-sex attractions and developing sexual or romantic attractions towards women.

180.     Dr. Nicolosi's SOCE counseling involves discussions with the client concerning the nature and cause of their unwanted same-sex sexual attractions, the extent of these attractions, assistance in understanding traditionally, gender-appropriate behaviors and characteristics, and assistance in fostering and developing those gender-appropriate behaviors and characteristics.

181.     Dr. Nicolosi also has had many clients who decided that they wanted to remain in the homosexual lifestyle, but report that SOCE counseling helped them to understand the nature of their homosexual identity and were able to better cope with that identity after SOCE counseling.

182.     Many of Dr. Nicolosi's clients that decide to remain in the homosexual lifestyle have reported that they experienced no harm as a result of SOCE counseling.

183.     Dr. Nicolosi has been engaging in SOCE counseling with John Doe 1 for a year and a half.

184.     During the course of John Doe 1's SOCE counseling, Dr. Nicolosi has noticed a substantial reduction in John Doe 1's unwanted same-sex attractions and has been successful in helping Doe 1 and his parents understand Doe 1's same-sex attractions.

185.     Dr. Nicolosi has been told by John Doe 1 and his parents that they are very happy with the SOCE counseling and believe it has had an overall positive impact on Doe 1.

186.     Dr. Nicolosi believes that if he is prohibited from continuing his SOCE counseling with Doe 1, then Doe 1 will regress in his progress towards the elimination of his unwanted same-sex attractions and will have a difficult time in continuing the progress towards his desired recognition of his heterosexual potential.

187.     Dr. Nicolosi has been engaging in SOCE counseling with John Doe 2 for a year and a half.

188.     Dr. Nicolosi's SOCE counseling with Doe 2 has had an important impact on John Doe 2 and his parents and has substantially helped their relationship.

189.     Dr. Nicolosi's SOCE counseling with Doe 2 has allowed him to understand the nature and source of Doe 2's same-sex attractions.

190.     John Doe 2 and his parents have reported an overall positive experience with Doe 2's SOCE counseling.

191.     Dr. Nicolosi believes that if he is prohibited from continuing his SOCE counseling with Doe 2, then Doe 2 will suffer an immediate regression in his understanding of his same-sex attractions and will suffer difficulty in continuing the development and healing of Doe 2's relationship with his parents.

192.     Dr. Nicolosi believes that compliance with SB 1172 will put him in an irresolvable conflict with the other provisions of the psychological ethics codes and force him to commit an ethical violation.

193.     Dr. Nicolosi has many videos on his website and also on other websites, including YouTube, that specifically discuss SOCE counseling.

194.     Dr. Nicolosi's videos discuss the nature of SOCE counseling, explain the various techniques that he uses during SOCE counseling, and explain that he has had many clients succeed in reducing or eliminating their unwanted same-sex attractions.

195.     In some of his videos, Dr. Nicolosi also advocates for the use of SOCE counseling for those patients seeking a reduction or elimination of their unwanted same-sex attractions.

Complaint for Declaratory Judgment, Injunctive Relief and Nominal Damages - 27

196.      SB 1172 prohibits all practices that seek to eliminate or reduce same-sex attractions in minors, but provides very little guidance on the scope of this prohibition.

197.      A plain reading of SB 1172's prohibitions indicate that Dr. Nicolosi's videos would also be included as a practice that would seek to eliminate or reduce same-sex attractions in minors.

198.      Dr. Nicolosi's videos are available to virtually all minors in California, which makes the possibility of this ethical violation even more problematic.

199.      Dr. Nicolosi also engages in one of the largest SOCE counseling referral practices in the world, but SB 1172 provides no guidance on whether referring a minor patient seeking SOCE counseling to another psychotherapist or counselor also constitutes a practice seeking to reduce or eliminate same-sex attractions in minors.

200.      SB 1172 leaves Dr. Nicolosi in an irresolvable collision course with the provisions of the APA's ethical codes because SB 1172 provides very little information concerning what elements of his practice would constitute violations of SB 1172.

201.      Dr. Nicolosi also provides SOCE counseling to minors outside of California telephonically or through other video-conferencing methods.

202.      SB 1172 provides no guidance as to whether Dr. Nicolosi's provision of SOCE counseling to minors outside of California would also constitute an ethical violation.

203.      SB 1172 also forces Dr. Nicolosi to violate the requirements the ethical code because if he complies with SB 1172, he will violate the code of ethics, and if he does not comply and engages in SOCE counseling or refers to someone who does, he violates SB 1172.

**Robert Vazzo**

204.      Robert Vazzo is a California Licensed Marriage and Family Therapist.

205.    He received a Master of Marriage and Family Therapy degree from the University of Southern California in 2004.

206.    Mr. Vazzo is also a member of NARTH, the California Association of Marriage and Family Therapists, and is the Treasurer for the International Institute of Reorientation Therapies.

207.    Prior to beginning his own practice, Mr. Vazzo interned under the direction of Plaintiff, Dr. Joseph Nicolosi, at the Thomas Aquinas Psychological Clinic in Los Angeles, California.

208.    Mr. Vazzo now specializes in the SOCE counseling and practices in the areas of unwanted same-sex attractions, pedophilia, hebephilia, ephebolphilia, and transvestic fetishism.

209.    Mr. Vazzo's practice consists of fifteen to twenty clients per week, with approximately ten percent of those being minors seeking SOCE counseling.

210.    Many of Mr. Vazzo's clients that request SOCE counseling do so based on their sincerely-held religious beliefs that homosexuality is against the fundamental tenets of their faith and that they need SOCE counseling to avoid such behavior.

211.    Mr. Vazzo believes that SB 1172 essentially condones child abuse because many of his minor clients that seek SOCE counseling and struggle with unwanted same-sex attractions do so because of past abuse or trauma.

212.    Mr. Vazzo believes that his clients risk becoming depressed, anxious, confused, hopeless, and even potentially suicidal if SOCE counseling is prohibited.

213.    Prior to engaging in SOCE counseling with his clients, Mr. Vazzo provides an extensive informed consent document, which outlines the nature of the therapy, explains the controversial nature of SOCE counseling, informs the client that some psychotherapists think

that sexual orientation cannot or should not be changed, and informs the client of the potential benefits and risks associated with SOCE counseling.

214.     All of Mr. Vazzo's clients that have engaged in SOCE counseling for at least one year have experiences at least some degree of change in their sexual orientation.

215.     Mr. Vazzo often receives unsolicited feedback from his clients, some of whom have made statements such as: "this therapy really works," "I'm so happy I found your therapy," and "I know exactly what caused my unwanted same-sex attractions now."

216.     Mr. Vazzo also has many clients who decide to remain homosexual and who know his professional opinion on sexual orientation, but decide to remain in therapy with Mr. Vazzo because they report that SOCE counseling has helped them in dealing with other issues.

217.     Mr. Vazzo respects the rights of all of his patients and does not force or coerce anyone into any type of treatment as it would be an ethical violation for him to do so.

218.     Mr. Vazzo believes that SB 1172 is hypocritical because it is based on the notion that homosexuality is not a mental disorder and needs no therapy, but he often treats children for behaviors and habits that are not mental disorders, including pornography, pornographic addiction, masturbation, premarital sexual activity, relational issues, grief management, emotional management, and religious issues.

219.     SB 1172 will force Mr. Vazzo to cease much of his practice with minor clients who seek to eliminate their unwanted same-sex attractions.

220.     SB 1172 will cause irreparable harm to Mr. Vazzo because it will force him to violate his sincerely-held religious beliefs that homosexuality is sinful and that incorporation of these biblical principles into his therapy is paramount in helping his clients deal with their unwanted same-sex attractions.

221.     SB 1172 also places Mr. Vazzo in an irresolvable conflict because it does not explain at what point he will be considered to be engaging in SOCE counseling and could even subject a counselor to liability if a minor patient experiences a change in sexual orientation during the course of normal therapy.

222.     SB 1172 virtually guarantees that Mr. Vazzo will inevitably commit an ethical violation.

223.     Mr. Vazzo is also a licensed Marriage and Family Therapist in Florida and Ohio.

224.     SB 1172 does not provide any guidance as to whether Mr. Vazzo is also committing an ethical violation when engaging in SOCE counseling while operating under his license in states other than California.

225.     Mr. Vazzo is concerned that if he engaged in SOCE counseling under his license in Florida or Ohio could also be considered any practice seeking to reduce or eliminate same-sex attractions under SB 1172 and cause him to commit an ethical violation.

226.     SB 1172 also forces Mr. Vazzo to violate the requirements the ethical code because if he complies with SB 1172, he will violate the code of ethics, and if he does not comply and engages in SOCE counseling or refers to someone who does, he violates SB 1172.

**NARTH**

227.     NARTH is a professional, scientific organization that offers hope to those who struggle with unwanted homosexuality and same-sex attractions.

228.     As an organization, NARTH disseminates educational information, conducts and collects scientific research, promotes effective therapeutic treatment, and provides international referrals to those who seek its assistance.

229.     NARTH is engaged in extensive research concerning individuals who have successfully reduced or eliminated their unwanted same-sex attractions and the psychological factors that are typically associated with a homosexual lifestyle.

230.     NARTH offers scholarly publications and educational information to the general public.

231.     NARTH provides various presentations across the country hosted by mental health professionals who specialize in SOCE counseling.

232.     NARTH advocates for an open discussion of all viewpoints concerning SOCE counseling and its potential benefits or harms to patients.

233.     NARTH supports the rights of individuals with unwanted same-sex attractions to receive effective psychological care, including SOCE counseling, and the rights of professionals to offer that care.

234.     NARTH does not advocate for or support imposing its ideology on any patient and seeks to offer the course of treatment desired by the patient in accordance with the patient's right to self-determination.

235.     SB 1172 prohibits mental health providers from using SOCE, defined as "any practices by mental health providers that seek to change an individual's sexual orientation."

236.     NARTH's dissemination of educational information regarding homosexuality and promotion of effective therapeutic treatment for homosexuals falls within the category of conduct SB 1172 prohibits.

237.     Disseminating information and providing referrals would place its licensed professional members at risk of being found in violation of their respective professional codes of conduct.

238.     NARTH members in and outside of California who currently have clients that receive SOCE treatment in and outside of California.

239.     Some of the clients of NARTH members are minors who would lose all ability to continue receiving the SOCE counseling that they desire.

240.     These minor clients would suffer regression in their course of treatment as a result of their counselor being prohibited from continuing to offer it.

241.     NARTH members will continue to have clients approach them concerning a desire to reduce or eliminate unwanted same-sex attractions.

242.     Some NARTH members' report that five to ten percent of their practices involve SOCE counseling and that nearly half of those seeking such counseling are minors.

243.     SB 1172 has caused and will continue to cause NARTH to suffer irreparable injury.

244.     Banning SOCE will cause immediate and irreparable harm to minors seeking counseling, their parents/guardians, and to Plaintiffs and counselors when clients seek such counseling and they are forbidden to offer it or to refer clients to professionals who do.

245.     SB 1172 also forces NARTH's members to violate the requirements the ethical codes under which they are licensed because if they comply with SB 1172, they will violate their respective codes of ethics, and if they do not comply and engage in SOCE counseling or refer to someone who does, they will violate SB 1172.

### AACC

246.     AACC is an international nonprofit professional scientific organization with 50,000 members representing the full spectrum of mental health professionals.

247.     AACC's mission is to equip its members with distinctively Christian and clinically sound psycho-educational resources and services that address the whole person and which help individuals move toward personal wholeness, interpersonal competence, mental stability, and spiritual maturity.

248.     AACC seeks to encourage and support Christian counseling worldwide; disseminate information, educational resources, and counseling aids; stimulate interaction and mutual growth between mental health practitioners; advocate for the balanced integration of counseling and psychological principles with theology; inspire and offer the highest levels of training and continuing education; and promote ethical practice, integrity, sound research, and excellence in the delivery of professional and pastoral services.

249.     AACC's members adhere to the time-honored and foundational ethical value of client self-determination. AACC's members regard self-determination as a  cornerstone principle in the treatment of mental health disorders as found in the language of the ethical codes of notable professional member organizations such as the American Psychological Association (APA), the American Counseling Association (ACA), and the American Association of Marriage and Family Therapists (AAMFT).

250.     AACC's members follow the ethic construct that every client seeking mental health services has the inherent right to participate in treatment that is in alignment with his/her religious beliefs and faith-based values, and furthermore, to have this right vigorously protected. This ethical construct is severely undermined when members are prohibited from utilizing or even discussing particular types of therapeutic treatment.

251.     AACC's members adhere to the construct that when a client's faith values may be in conflict with other cultural values, such as those expressed by the Legislature in SB 1172, that

1   ultimately the client—and in the case of a minor, his/her parent or legal guardian—has the moral

2   and ethical right to participate in and determine the appropriate course of care, including

3   alignment with his/her relevant religious beliefs.

4   252.   SB 1172 unfairly and unnecessarily discriminates against the religious liberties of

5   AACC's members and their clients and represents an intrusive and potentially damaging

6   dynamic that undermines the delivery of care and the therapeutic relationship.

7   253.   All Plaintiffs are faced with immediate and irreparable harm because SB 1172

8   goes into full effect on January 1, 2013.

9   254.   The Plaintiff parents face immediate and irreparable harm to their rights as

10   parents to provide for the well-being of their children, and sincerely fear that by stopping

11   counseling their child will suffer irreparable harm, anxiety, confusion, and other mental health

12   consequences. They will be forced to receive only one viewpoint on same-sex attractions even

13   though that viewpoint conflicts with their religious and moral values.

14   255.   The Plaintiff minor face immediate and irreparable harm because effective

15   January 1, 2013, they will no longer be able to determine their own destiny because that will be

16   determined by the state, and they will suffer irreparable harm when the counseling they seek and

17   freely chose will be eliminated by SB 1172. They will be forced to receive only one viewpoint

18   on same-sex attractions even though that viewpoint conflicts with their religious and moral

19   values.

20   256.   The Plaintiff counselors, NARTH, AACC and their members, face immediate and

21   irreparable harm because effective January 1, 2013, they will be forced to either violate their

22   respective ethical codes by refusing to honor the self-determination of their clients and having to

23   impose a state-mandated ideology on them despite their clients objections to the contrary, and if

they do honor their clients' self-determination to seek spiritual and values-based counseling to reduce or eliminate their same-sex attractions, they will violate SB 1172. Their licenses are on the line and their right to freedom of speech will be eliminated because they will be forced to present only one viewpoint on same-sex attractions.

257.     Plaintiffs have no adequate remedy at law to correct the continuing deprivations of their most cherished liberties and rights under the United States Constitution, and the California Constitution.

258.     Plaintiffs immediately need injunctive and declaratory relief to prevent this constitutional deprivations of their rights.

## COUNT I—SB 1172 VIOLATES THE PLAINTIFFS' RIGHT TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT.

259.     Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 258.

260.     The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' freedom of speech.

261.     SB 1172, on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' speech.

262.     SB 1172, on its face and as applied, discriminates against Plaintiffs' speech on the basis of the content of their message they offer or seek to receive.

263.     SB 1172's prohibition, on its face and as applied, on mental health providers and counselors from offering or referring clients to someone who offers SOCE counseling as a part of their therapy represents unconstitutional viewpoint discrimination.

264.       SB 1172, on its face and as applied, authorizes only one viewpoint on SOCE and unwanted same-sex sexual attractions by forcing the Therapist Plaintiffs and the members of the associations to present only one viewpoint on the otherwise permissible subject matter of same-sex attractions, and forces the Parents/Guardians and Minor Plaintiffs to receive only one viewpoint on this otherwise permissible subject matter.

265.       Defendants lack a compelling, legitimate or other significant governmental interest to justify SB 1172's infringement of the right to free speech.

266.       SB 1172, on its fact and as applied, is not the least restrictive means to accomplish any permissible government purpose sought to be served by the law.

267.       SB 1172 does not leave open ample alternative channels of communication for Plaintiffs.

268.       SB 1172, on its face and as applied, is irrational and unreasonable, and imposes unjustifiable restrictions on constitutionally-protected speech.

269.       SB 1172, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiffs to freely communicate regarding or receiving information pertaining to unwanted same-sex sexual attractions.

270.       SB 1172's prohibition on mental health providers offering or referring to someone who offers SOCE that could change, reduce, or otherwise address a minor client's unwanted same-sex attractions, on its face and as applied, abridges Plaintiffs' offer and right to receive information.

271.       By declaring SOCE counseling unprofessional conduct and subjecting mental health providers and counselors who use SOCE counseling to professional discipline, including potential license suspension or revocation, SB 1172, on its face and as applied,  represents an

1   unconstitutional condition and prior restraint on the practice of mental health professionals and

2   operates as a prior restraint on the right to free speech. It vest unbridles discretion in the

3   Defendant decision-makers to grant or deny, to apply or not apply SB 1172 in a manner to

4   restricts free speech and subjects the Therapist Plaintiffs to ethical code violations.

5       272.    SB 1172, on its face and as applied, is impermissibly vague and overbroad as it

6   requires professionals subject to its dictates to guess at its meaning and differ as to its application.

7       273.    SB 1172, on its face and as applied, is under-inclusive by limiting the prohibition

8   from using SOCE counseling to minors.

9       274.    SB 1172, on its face and as applied, is unconstitutionally overbroad as it chills and

10  abridges the free speech rights of all mental health providers in the State of California who use

11  therapy techniques that can change a minor client's sexual orientation and does not leave open

12  alternative methods of communication.

13      275.    On its face and as applied, SB 1172's violation of Plaintiffs' rights of free speech

14  has caused and will continue to cause Plaintiffs to suffer undue and actual hardship and

15  irreparable injury.

16      276.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of

17  their most cherished constitutional liberties.

18  **COUNT II—SB 1172 VIOLATES THE PLAINTIFFS' RIGHT TO LIBERTY OF**
19  **SPEECH UNDER ARTICLE I, § 2(a) OF THE CALIFORNIA CONSTITUTION.**
20

21      277.    Plaintiffs re-allege every allegation in the preceding paragraphs numbered 1

22  through 276.

278.     Article I, § 2(a) of the Constitution of the State of California states, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

279.     Article I, § 2 of the California Constitution provides greater protection to liberty of speech than does the First Amendment to the United States Constitution.

280.     SB 1172, on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' speech.

281.     SB 1172, on its face and as applied, discriminates against Plaintiffs' speech on the basis of the content of their message they offer or seek to receive.

282.     SB 1172's prohibition, on its face and as applied, on mental health providers and counselors from offering or referring clients to someone who offers SOCE counseling as a part of their therapy represents unconstitutional viewpoint discrimination.

283.     SB 1172, on its face and as applied, authorizes only one viewpoint on SOCE and unwanted same-sex sexual attractions by forcing the Therapist Plaintiffs and the members of the associations to present only one viewpoint on the otherwise permissible subject matter of same-sex attractions, and forces the Parents/Guardians and Minor Plaintiffs to receive only one viewpoint on this otherwise permissible subject matter.

284.     Defendants lack a compelling, legitimate or other significant governmental interest to justify SB 1172's infringement of the right to free speech.

285.     SB 1172, on its fact and as applied, is not the least restrictive means to accomplish any permissible government purpose sought to be served by the law.

286.     SB 1172 does not leave open ample alternative channels of communication for Plaintiffs.

287. SB 1172, on its face and as applied, is irrational and unreasonable, and imposes unjustifiable restrictions on constitutionally-protected speech.

288. SB 1172, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiffs to freely communicate regarding or receiving information pertaining to unwanted same-sex sexual attractions.

289. SB 1172's prohibition on mental health providers offering or referring to someone who offers SOCE that could change, reduce, or otherwise address a minor client's unwanted same-sex attractions, on its face and as applied, abridges Plaintiffs' offer and right to receive information.

290. By declaring SOCE counseling unprofessional conduct and subjecting mental health providers and counselors who use SOCE counseling to professional discipline, including potential license suspension or revocation, SB 1172, on its face and as applied, represents an unconstitutional condition and prior restraint on the practice of mental health professionals and operates as a prior restraint on the right to free speech. It vest unbridles discretion in the Defendant decision-makers to grant or deny, to apply or not apply SB 1172 in a manner to restricts free speech and subjects the Therapist Plaintiffs to ethical code violations.

291. SB 1172, on its face and as applied, is impermissibly vague and overbroad as it requires professionals subject to its dictates to guess at its meaning and differ as to its application.

292. SB 1172, on its face and as applied, is under-inclusive by limiting the prohibition from using SOCE counseling to minors.

293. SB 1172, on its face and as applied, is unconstitutionally overbroad as it chills and abridges the free speech rights of all mental health providers in the State of California who use

1  therapy techniques that can change a minor client's sexual orientation and does not leave open

2  alternative methods of communication.

3  294.  On its face and as applied, SB 1172's violation of Plaintiffs' rights of free speech

4  has caused and will continue to cause Plaintiffs to suffer undue and actual hardship and

5  irreparable injury.

6  295.  Plaintiffs have no adequate remedy at law to correct the continuing deprivation of

7  their most cherished constitutional liberties.

8
9  **COUNT III—SB 1172 VIOLATES THE PLAINTIFFS' RIGHT TO FREE**
10  **EXERCISE OF RELIGION.**
11
12  296.  Plaintiffs re-allege every allegation in the preceding paragraphs numbered 1

13  through 295.

14  297.  The Free Exercise Clause of the First Amendment to the United States

15  Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from

16  abridging Plaintiffs' right to free exercise of religion.

17  298.  The Parents/Guardians and Minor Plaintiffs have sincerely-held religious beliefs

18  that same-sex sexual attractions are wrong and they seek to resolve these conflicts between their

19  religious beliefs and their attractions in favor of their religious beliefs.

20  299.  The Therapist Plaintiffs and the members of the organizational Plaintiffs also

21  have sincerely-held religious beliefs to provide spiritual counsel and assistance to their clients

22  who seek such counsel in order to honor their clients' right to self-determination and to freely

23  exercise their own sincerely-held religious beliefs to counsel on the subject matter of same-sex

24  attractions from a religious viewpoint that aligns with their religious beliefs and those of their

25  clients.

300.     SB 1172, on its face and as applied, targets the Plaintiffs' beliefs regarding human nature, gender, ethics, morality, and SOCE counseling, which are informed by the Bible and constitute central components of the Plaintiffs' sincerely held religious beliefs, and SB 1172 will cause them a direct and immediate conflict with their religious beliefs by prohibiting them from offering, referring and receiving counseling that is consistent with their religious beliefs.

301.     SB 1172, on its face and as applied, has impermissibly burdened Plaintiffs' sincerely-held religious beliefs and compels them to both change those religious beliefs and to act in contradiction to them.

302.     SB 1172's imposition, on its face and as applied, on the Plaintiffs is neither neutral nor generally applicable but rather specifically targets their religious speech and beliefs, and is viewpoint-based, and thus expressly on its face and as applied is discriminatory to sincerely-held religious beliefs that are contrary to the state-approved viewpoint on same-sex attractions.

303.     SB 1172, on its face and as applied, has unconstitutionally conditioned state licensing on the Therapist Plaintiffs by requiring them to yield their clearly established right to free exercise of religion and belief.

304.     The State of California's alleged interest in protecting minor's from the so-called harm of SOCE counseling is unsubstantiated and does not constitute a compelling state interest.

305.     No compelling state interest justifies the burdens Defendants imposed upon the Plaintiffs' rights to the free exercise of religion.

306.     Even if SB 1172's provisions were supported by a compelling state interest, they are not the least restrictive means to accomplish any permissible government purpose SB 1172 seeks to serve.

307.     On its face and as applied, SB 1172's violation of Plaintiffs' rights to free exercise of religion has caused and will continue to cause Plaintiffs to suffer undue and actual hardship and irreparable injury.

308.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

**COUNT IV—SB 1172 VIOLATES THE PLAINTIFFS' RIGHT TO FREE EXERCISE AND ENJOYMENT OF RELIGION UNDER ARTICLE I, § 4 OF THE CALIFORNIA CONSTITUTION.**

309.     Plaintiffs re-allege every allegation in the preceding paragraphs numbered 1 through 308.

310.     Article I, § 4 of the California Constitution states, "Free exercise and enjoyment of religion without discrimination or preference are guaranteed."

311.     The Parents/Guardians and Minor Plaintiffs have sincerely-held religious beliefs that same-sex sexual attractions are wrong and they seek to resolve these conflicts between their religious beliefs and their attractions in favor of their religious beliefs.

312.     The Therapist Plaintiffs and the members of the organizational Plaintiffs also have sincerely-held religious beliefs to provide spiritual counsel and assistance to their clients who seek such counsel in order to honor their clients' right to self-determination and to freely exercise their own sincerely-held religious beliefs to counsel on the subject matter of same-sex attractions from a religious viewpoint that aligns with their religious beliefs and those of their clients.

313.     SB 1172, on its face and as applied, targets the Plaintiffs' beliefs regarding human nature, gender, ethics, morality, and SOCE counseling, which are informed by the Bible and constitute central components of the Plaintiffs' sincerely held religious beliefs, and SB 1172 will

cause them a direct and immediate conflict with their religious beliefs by prohibiting them from offering, referring and receiving counseling that is consistent with their religious beliefs.

314. SB 1172, on its face and as applied, has impermissibly burdened Plaintiffs' sincerely-held religious beliefs and compels them to both change those religious beliefs and to act in contradiction to them.

315. SB 1172's imposition, on its face and as applied, on the Plaintiffs is neither neutral nor generally applicable but rather specifically targets their religious speech and beliefs, and is viewpoint-based, and thus expressly on its face and as applied is discriminatory to sincerely-held religious beliefs that are contrary to the state-approved viewpoint on same-sex attractions.

316. SB 1172, on its face and as applied, has unconstitutionally conditioned state licensing on the Therapist Plaintiffs by requiring them to yield their clearly established right to free exercise of religion and belief.

317. The State of California's alleged interest in protecting minor's from the so-called harm of SOCE counseling is unsubstantiated and does not constitute a compelling state interest.

318. No compelling state interest justifies the burdens Defendants imposed upon the Plaintiffs' rights to the free exercise of religion.

319. Even if SB 1172's provisions were supported by a compelling state interest, they are not the least restrictive means to accomplish any permissible government purpose SB 1172 seeks to serve.

320. On its face and as applied, SB 1172's violation of Plaintiffs' rights to free exercise of religion has caused and will continue to cause Plaintiffs to suffer undue and actual hardship and irreparable injury.

321.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

**COUNT V—SB 1172 VIOLATES JACK AND JANE DOES 1, 2 and 3'S PARENTAL RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENT.**

322.     Plaintiffs re-allege every allegation in the preceding paragraphs numbered 1 through 321.

323.     The First and Fourteenth Amendments to the United States Constitution protect the fundamental rights of parents to direct the upbringing and education of their children according to their sincerely-held religious beliefs.

324.     To withstand constitutional scrutiny, restrictions on fundamental parental rights must be supported by a compelling state interest and must be narrowly tailored to meet that end.

325.     Jack and Jane Does 1,2 and 3 desire that their sons John Does 1, 2 and 3 receive SOCE counseling.

326.     SB 1172 prevents Jack and Jane Does 1, 2 and 3 from seeking mental health treatment for John Does 1, 2 and 3 that conforms to their sincerely-held religious beliefs.

327.     SB 1172 is not supported by a compelling state interest and, even if it was, is not narrowly tailored therefore violating Jack and Jane Does 1, 2 and 3's fundamental parental rights.

328.     SB 1172's violation of Jack and Jane Doe 1,2 and 3's fundamental parental rights has caused and will continue to cause Jack and Jane Doe 1, 2 and 3 to suffer undue and actual hardship and irreparable injury.

329.     The Plaintiffs appearing as Parents/Guardians have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

**COUNT VI—SB 1172 VIOLATES JACK AND JANE DOES 1, 2, and 3's  PARENTAL RIGHTS UNDER ARTICLE I, § 7 OF THE CALIFORNIA CONSTITUTION.**

330.     Plaintiffs re-allege every allegation in the preceding paragraphs numbered 1 through 329.

331.     Article I, § 7 of the California Constitution protects the rights of parents to direct the upbringing of their children.

332.     To withstand constitutional scrutiny, restrictions on parental rights must be supported by a compelling state interest and must be narrowly tailored to meet that end.

333.     Jack and Jane Does 1,2 and 3 desire that their sons John Does 1, 2 and 3 receive SOCE counseling.

334.     SB 1172 prevents Jack and Jane Does 1, 2 and 3 from seeking mental health treatment for John Does 1, 2 and 3 that conforms to their sincerely-held religious beliefs.

335.     SB 1172 is not supported by a compelling state interest and, even if it was, is not narrowly tailored therefore violating Jack and Jane Does 1, 2 and 3's parental rights.

336.     SB 1172's violation of Jack and Jane Does 1, 2 and 3's parental rights has caused and will continue to cause Jack and Jane Does 1, 2 and 3 to suffer undue and actual hardship and irreparable injury.

337.     The Plaintiffs appearing as Plaintiffs/Guardians have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

A.     That this Court issue a Preliminary Injunction enjoining Defendants, Defendants' officers, agents, employees and all other persons acting in active concert with them, from

enforcing California Business and Professions Code §§ 865, 865.1, 865.2 ("SB 1172") against Plaintiffs so that:

      i.    Defendants will not use SB 1172 in any manner to infringe Plaintiffs' constitutional and statutory rights in the counseling of their clients or from offering a viewpoint on an otherwise permissible subject matter;

      ii.    Defendants will not use SB 1172 in any manner to prohibit Plaintiffs from engaging in SOCE treatments with those minor clients who seek such treatment;

      iii.    Defendants will use SB 1172 to prohibit parents and minors from seeking or receiving SOCE for unwanted same-sex sexual attractions; and

      iv.    Defendants will not use SB 1172 in any manner to punish Plaintiffs for engaging, referring to, seeking, or receiving SOCE counseling.

      B.    That this Court issue a Permanent Injunction enjoining Defendants, Defendants' officers, agents, employees and all other persons acting in active concert with them, from enforcing California Business and Professions Code §§ 865, 865.1, 865.2 ("SB 1172") against Plaintiffs so that:

      i.    Defendants will not use SB 1172 in any manner to infringe Plaintiffs' constitutional and statutory rights in the counseling of their clients or from offering a viewpoint on an otherwise permissible subject matter;

      ii.    Defendants will not use SB 1172 in any manner to prohibit Plaintiffs from engaging in SOCE treatments with those minor clients who seek such treatment;

1    iii. Defendants will use SB 1172 to prohibit parents and minors from seeking or

2       receiving SOCE for unwanted same-sex sexual attractions; and

3    iv. Defendants will not use SB 1172 in any manner to punish Plaintiffs for

4       engaging, referring to, seeking, or receiving SOCE counseling.

5   C. Defendants will not use SB 1172 in any manner to punish Plaintiffs for engaging,

6   referring to, seeking, or receiving SOCE counseling.

7   D. That this Court render a Declaratory Judgment declaring California Business and

8 Professions Code §§ 865, 865.1, 865.2 ("SB 1172") and Defendants' actions in applying §§ 865,

9 865.1, 865.2 against Plaintiffs unconstitutional under the United States Constitution and

10 California Constitution, declaring:

11     i. Defendants violated Plaintiffs' right to freedom of speech by prohibiting them

12       from providing, referring to, seeking, or receiving information concerning

13       SOCE treatments and the SOCE counseling;

14    ii. Defendants violated Plaintiffs' right to free exercise of religion by prohibiting

15       Plaintiffs from providing, referring to, seeking, or receiving information

16       concerning SOCE treatments and the SOCE counseling in accordance with

17       their sincerely-held religious beliefs;

18    iii. Defendants violated Plaintiffs' fundamental right to direct the upbringing and

19       education of their children;

20   E. That this Court adjudge, decree, and declare the rights and other legal relations

21 with the subject matter here in controversy so that such declaration shall have the force and

22 effect of final judgment;

1    F.    That this Court retain jurisdiction of this matter for the purpose of enforcing this

2    Court's order;

3    G.    That this Court award Plaintiffs the reasonable costs and expenses of this action,

4    including attorney's fees, in accordance with 42 U.S.C. § 1988.

5    H.    That this Court grant such other and further relief as this Court deems equitable

6    and just under the circumstances.

7

8                                                         /s/ _____
9                                                         Mary E. McAlister
10                                                        California Bar No. 148570
11                                                        Mathew D. Staver*
12                                                        Stephen M. Crampton*
13                                                        Liberty Counsel
14                                                        Attorneys for Plaintiffs
15                                                        P.O. Box 11108
16                                                        Lynchburg, VA 24502
17                                                        Tel. 434-592-7000
18                                                        Fax: 434-592-7700
19                                                        court@LC.org
20
21                                                        * Application to appear Pro Hac Vice
22                                                        pending

Complaint for Declaratory Judgment, Injunctive Relief and Nominal Damages - 49