Mary E. McAlister
California Bar Number 148570
Liberty Counsel
P.O. Box 11108
Lynchburg, VA 24506
(434) 592-7000 (telephone)
(434) 592-7700 (facsimile)
court@lc.org Email
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

DAVID PICKUP, CHRISTOPHER H.
ROSIK, PH.D., JOSEPH NICOLOSI, PH.D,
ROBERT VAZZO, NATIONAL ASSOCIATION FOR
RESEARCH AND THERAPY OF HOMOSEXUALITY
(NARTH), AMERICAN ASSOCIATION OF CHRISTIAN
COUNSELORS (AACC), JOHN DOE 1, by and through JACK
AND JANE DOE 1, JACK DOE 1, individually, and
JANE DOE 1, individually,
JOHN DOE 2, by and through JACK
AND JANE DOE 2, JACK DOE 2, individually, and
JANE DOE 2, individually

Case No.:_____

    Plaintiffs
v.

EDMUND G. BROWN, Jr. Governor of the State
of California, *in his official capacity*, ANNA
M. CABALLERO, Secretary of the California
State and Consumer Services Agency, *in her
official capacity*, KIM MADSEN, Executive
Officer of the California Board of Behavioral
Sciences, *in her official capacity*, MICHAEL
ERICKSON, PH.D, President of the California
Board of Psychology, *in his official capacity*; SHARON
LEVINE, President of the Medical Board of California,
*in her official capacity*.

    Defendants.

DECLARATION OF DR. JOSEPH NICOLOSI      1

# DECLARATION OF DR. JOSEPH NICOLOSI

I, Joseph Nicolosi, hereby declare as follows:

1. I am over the age of 18 and am one of the Plaintiffs in this action. The statements in this Declaration are true and correct and if called upon to testify to them I would and could do so competently.

2. I am submitting this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3. I am a licensed psychologist in the state of California. I received my Masters of Arts degree in Psychology from the New School for Social Research and my Doctor of Philosophy in Clinical Psychology from the California School of Professional Psychology. I am the Founder and the Clinical Director of the Thomas Aquinas Psychologists Clinic in Encino California.

4. I have performed extensive research on the topic of homosexuality and the nature of same-sex attractions and have studied extensively the actual benefits of sexual orientation change efforts ("SOCE") counseling. I have published numerous articles, books, and other scholarly works on the topic of homosexuality and the course of treatment for those individuals who seek to reduce or eliminate their unwanted same-sex attractions. I also have had the opportunity to be interviewed and featured on numerous programs to discuss the issue of same-sex attractions and the availability of treatment options for people who wish to eliminate such attractions.

5. In my practice, I specialize in the treatment and counseling of males who struggle with unwanted same-sex sexual attractions.

6. Prior to engaging in SOCE counseling with patients, I provide them an extensive consent form that outlines the nature of the treatment, the potential benefits and risks, including the fact that some psychotherapists believe that sexual orientation cannot or should not be changed, and

1  informs the client that success in any method of psychotherapy is not guaranteed and could
2  potentially be harmful. In my consent form, I explicitly state that I do not, nor does anyone at my
3  clinic, provide gay-affirming treatment and that clients should seek an alternative therapist to
4  help them if that is their stated objective.

5  7.  I also explain that if at any point in the course of the client's therapy, the client decides
6  that he no longer wants therapy for unwanted same-sex attractions, then he should inform me
7  immediately because a client's course of treatment should always be based on his objectives.
8  Related to this, I explain that if the client decides during the course of SOCE counseling that he
9  wants therapy that affirms his same-sex attractions, then it would be best for the client to seek an
10 alternative therapist.

11 8.  I explain to my clients that the nature of SOCE counseling is such that many people
12 report benefits from the counseling, but that it can invoke initial feelings of stress and anxiety;
13 that many experience a reduction in same-sex attractions; and that often a person will continue to
14 experience same-sex attractions even after therapy. I explain that as with other issues people face
15 in their lives, many people report that their recognition of their heterosexual potential and
16 identity is a lifelong process that continues with them after therapy.

17 9.  My SOCE counseling consists of discussions with the client concerning the nature and
18 cause of their unwanted same-sex sexual attractions; the extent of these attractions; assistance in
19 understanding traditional, gender-appropriate behaviors and characteristics; and assistance in
20 fostering and developing those gender-appropriate behaviors and characteristics.

21 10.  Most of my patients with unwanted same-sex sexual attractions seek to develop and
22 foster healthy, heterosexual relationships and seek the elimination or reduction of their unwanted
23 same-sex sexual attractions. I have had many clients who, through SOCE counseling, have been

able to succeed in reducing their unwanted same-sex attractions and have reported a marked increase in their recognition of their heterosexual potential.

11.     I have also had clients who decided that they wanted to remain in the homosexual lifestyle, but report that SOCE counseling helped them to understand the nature of their homosexual identity and, as a result, were able to better cope with that identity after SOCE counseling. These same clients who decide to remain in the homosexual lifestyle have reported that they experienced no harm as a result of SOCE counseling.

12.     I have been engaging in SOCE counseling with Plaintiff Doe 1 for a year and a half. In the course of Doe 1's SOCE counseling, we have developed the therapeutic alliance that is necessary for all psychotherapy to be successful. The therapeutic alliance is the relationship that is developed between psychotherapist and patient and describes the collaborative nature of the relationship, which incorporates the client's goals and the psychotherapist's methods for accomplishing those goals. Because we have been able to develop this therapeutic alliance, Doe 1 and I have been able to successfully progress in the SOCE counseling and have moved closer to Doe 1's therapeutic goal of reducing his same-sex sexual attractions and increasing his recognition of his heterosexual potential.

13.     During the course of Doe 1's SOCE counseling, I have noticed a substantial reduction in his gender identity issues and his unwanted same-sex attractions. Doe 1 has reported that he now understands the nature and causes of his unwanted same-sex attractions and that he understands the triggers that cause those unwanted attractions to arise. Doe 1 and his parents now report that their relationship has become much better and that they are able to communicate openly and frankly about Doe 1's unwanted same-sex attractions. Doe 1 reports an overall positive impact

from SOCE counseling and believes that his progress in reducing his unwanted same-sex attractions will regress and be immediately harmed if he is unable to receive this counseling.

14.  As Doe 1's psychologist, I also believe that Doe 1 will suffer an immediate regression and that he will have difficulty in continuing to progress in his desired recognition of his heterosexual potential.

15.  I have been engaging in SOCE counseling with Plaintiff Doe 2 since for three and one half months. In the course of Doe 2's SOCE counseling, we have developed the therapeutic alliance that is necessary for all psychotherapy to be successful.  Because of Doe 2's age and individual needs, the sessions focus primarily on helping him understand his masculinity and gender. The understanding developed thus far has resulted in the reduction of his unwanted same-sex attractions, and has resulted in increasing recognition of his heterosexual potential. A critical component of Doe 2's therapy has been a focus on the overall family dynamic, through discussion with Doe 2's father and mother regarding how they relate to each other, and how they relate to, interact with and affirm Doe 2.

16.  Doe 2 and his parents now report that their relationship has become much better and that they are able to communicate more openly and frankly about Doe 2's unwanted same-sex attractions. Doe 2 exhibits growing certainty over his nascent sexuality and greater comfort with his sense of identity. Doe 2 reports an overall positive experience with SOCE counseling and believes that his progress in reducing his unwanted same-sex attractions will regress and be immediately harmed if he is unable to receive this counseling. As Doe 2's psychologist, I also believe that Doe 2 will suffer an immediate regression and that he will have difficulty in continuing to progress in the recognition of his desired heterosexual potential.

17. Because my clinic focuses on SOCE counseling, SB 1172 will cause immediate and irreparable harm to me in that SB 1172 will prohibit me from continuing beneficial and successful courses of treatment with my minor clients and force me to stop speaking about SOCE treatment or risk losing my license.

18. If I am forced to terminate my SOCE counseling with my minor patients, many of them will regress and will suffer adverse health consequences stemming from an inability to address their goal of recognizing their heterosexual potential.

19. If I am forced to terminate my SOCE counseling with my minor patients, it will destroy the relationship of trust and the therapeutic alliance that has developed between my clients and me, which will be detrimental to the well-being of the clients. Some of my clients and their parents will have to seek out counselors who are not licensed and therefore not subject to the dictates of SB 1172. They might continue to receive the SOCE counseling they desire, but it will be administered by unlicensed professionals.

20. As a clinical psychologist, I believe that it is important for SOCE counseling to be engaged in by those therapists who have studied it and understand the benefits and potential risks.

21. My practice of giving detailed information to my minor clients and their parents satisfies the ethical requirements that I provide all of the information that is reasonable for the client to make an informed decision concerning their individual course of treatment and that facilitates the autonomous client decision-making process. SB 1172 will cause me to violate Section 3.10 of the American Psychological Association's Ethics Code ("APA Code") because I will be prohibited from even discussing a course of treatment, SOCE, that is part of the information that

1  I am ethically required to provide to my clients. I would also be prohibited from even referring a
2  client who wants to discuss SOCE therapy to a professional who can provide it.

3  22.   Compliance with SB 1172 will force me to violate the informed consent mandates of
4  Section 3.10 of the APA Code and probably also infringe ethical requirement outlined in General
5  Principle E of the APA Code that I allow the patient complete freedom to make a self-
6  determined choice concerning his therapy. However, providing clients with unwanted same-sex
7  attractions with the treatment they desire automatically constitutes and ethical violation under SB
8  1172.

9  23.   Because of this impossible Catch-22, SB 1172 is certain to cause irreparable harm to my
10 practice by putting my professional license in jeopardy no matter how I proceed and with no
11 guidelines on how to resolve the conflict between SB 1172 and the ethical codes.

12 24.   SB 1172 will also cause me to violate Section 3.06 of the APA Code by causing me to
13 enter into a relationship where my objectivity is called into question because SB 1172 mandates
14 that only one ideology—i.e., the State's ideology condemning SOCE—be shared in the
15 counselor's office.

16 25.   If SB 1172 is permitted to go into effect, then my clients and I will be irreparably harmed
17 as I will be forced to abruptly discontinue ongoing beneficial treatment, destroy a beneficial
18 therapeutic alliance and deny treatment to other clients who come to me seeking help for
19 unwanted same-sex attractions. I will be placed in an impossible situation of having to choose
20 how I will subject myself to potential disciplinary action against my license, *i.e.*, either by failing
21 to comply with SB 1172 for the good of my patients or refusing to offer the information
22 necessary to fulfill my obligations to provide informed consent.

26. SB 1172 also presents a significant problem for another element of my practice and provides no guidance on whether it prohibitions apply to it. Specifically, I have many YouTube and other videos on my website and on other websites that specifically address the issue of SOCE counseling. These videos have the potential to reach every minor in California. SB 1172's language prohibits all efforts that seek to reduce or eliminate same-sex attractions, and it would seem that having videos on the Internet that advocate for SOCE counseling and provide information about where an individual can receive it might be perceived as an effort that seeks to reduce or eliminate same-sex attractions. I do not know whether SB 1172 requires me to remove all of these videos from my website and request that they be removed from others. Also, it is virtually impossible to ensure that all such videos are removed, so if SB 1172 is found to apply to them, then I could inadvertently be subject to disciplinary proceedings because of the viewing of a video that I thought had been removed from the internet. I also have many pamphlets and informative brochures on the website that would pose the same problems. Additionally, I am completely uncertain about whether a simple referral would constitute an effort seeking to reduce or eliminate same-sex attractions that would violate SB 1172. Informing someone that such SOCE counseling is available at another location by another individual not subject to SB 1172 seems like it could be a violation, but SB 1172 provides no guidance on this matter, so I am again faced with a dilemma of how to exercise my professional judgment. In short, SB 1172 provides no guidance on the seemingly innumerable applications of its prohibitions, which places me at constant risk of unknowingly being subject to losing my professional license. My clients will suffer as well, since I will not be able to confidentially counsel them on available options for their undesired same-sex attractions.

27. I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing statements are true and accurate.

Executed this 4th day of October, 2012.

_____
Joseph Nicolosi