Mary E. McAlister
California Bar Number 148570
Liberty Counsel
P.O. Box 11108
Lynchburg, VA 24506
(434) 592-7000 (telephone)
(434) 592-7700 (facsimile)
court@lc.org Email
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

DAVID PICKUP, CHRISTOPHER H. ROSIK, PH.D., JOSEPH NICOLOSI, PH.D, ROBERT VAZZO, NATIONAL ASSOCIATION FOR RESEARCH AND THERAPY OF HOMOSEXUALITY (NARTH), AMERICAN ASSOCIATION OF CHRISTIAN COUNSELORS (AACC), JOHN DOE 1, by and through JACK AND JANE DOE 1, JACK DOE 1, individually, and JANE DOE 1, individually, JOHN DOE 2, by and through JACK AND JANE DOE 2, JACK DOE 2, individually, and JANE DOE 2, individually

Case No.:_____

       Plaintiffs
   v.

EDMUND G. BROWN, Jr. Governor of the State of California, *in his official capacity*, ANNA M. CABALLERO, Secretary of the California State and Consumer Services Agency, *in her official capacity*, KIM MADSEN, Executive Officer of the California Board of Behavioral Sciences, *in her official capacity*, MICHAEL ERICKSON, PH.D, President of the California Board of Psychology, *in his official capacity*; SHARON LEVINE, President of the Medical Board of California, *in her official capacity*.

       Defendants.

DECLARATION OF ERIC SCALISE                                                                 1

# DECLARATION OF ERIC T. SCALISE, Ph.D.

I, Eric T. Scalise, Ph.D. hereby declare as follows:

1. I am over the age of 18 and am Vice President for Professional Development for the American Association of Christian Counselors ("AACC"), one of the Plaintiffs in this action. The statements in this Declaration are true and correct and if called upon to testify to them I would and could do so competently.

2. I am submitting this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3. I am a Licensed Marriage & Family Therapist and Licensed Professional Counselor in the Commonwealth of Virginia and was a Licensed Marriage and Family Counselor in the State of California for 23 years. I have a Ph.D. in Organizational Leadership from Regent University, an Educational Specialist degree in Advanced Psychotherapy from The College of William and Mary, a Master's of Education in Marriage and Family Counseling from the College of William and Mary and a Bachelor of Arts degree in Psychology from the College of William and Mary.

4. I am a clinical member of the American Association for Marriage and Family Therapy (AAMFT), and past clinical member of the American Counseling Association (ACA) and the Virginia Counseling Association, as well as a charter clinical member of the AACC. I have authored over 20 articles, as well as over 100 video workshops and other presentations.

5. The AACC was founded in 1989 and now has nearly 50,000 members throughout the world.

6. The AACC's members represent the entire spectrum of care, from lay/pastoral counselors to licensed mental health professionals. AACC's clinical members include Licensed Professional

Counselors, Licensed Mental Health Counselors, Licensed Marriage & Family Therapists, Licensed Clinical Social Workers, Licensed Clinical Psychologists, Licensed Substance Abuse Treatment Providers, Clinical Nurse Specialists, and Psychiatrists.

7. The Mission of the AACC is to equip this continuum of care with distinctively Christian and clinically sound psycho-educational resources and services that address the whole person and which help individuals move toward personal wholeness, interpersonal competence, mental stability, and spiritual maturity.

8. The AACC seeks to encourage and support Christian counseling worldwide; disseminate information, educational resources, and counseling aids; stimulate interaction and mutual growth between mental health practitioners; advocate for the balanced integration of counseling and psychological principles with theology; inspire and offer the highest levels of training and continuing education; and promote ethical practice, integrity, sound research, and excellence in the delivery of professional and pastoral services.

9. The AACC believes the professional research literature and a number of peer-reviewed articles demonstrate positive support for the efficacy of faith, spirituality and religious values as they pertain to treatment outcomes. For example, prominent researcher, Dr. Harold Koenig, Director of the Center for Spirituality, Theology and Health at Duke University (2001), completed a systematic review of nearly 1,600 published health-related studies and concluded that the integration of a spiritual paradigm not only demonstrates increased levels of self-esteem, social support and life satisfaction, but simultaneously reduces levels of anxiety, depression, loneliness, and suicide (Koenig, King, & Carson, 2012, *Handbook of Religion and Health*, 2nd ed.).

10. The AACC further believes the research literature supports the notion that when a client receives care within the confines of his/her basic worldview and foundational value system—of which religious affiliation is a significant marker for most—treatment outcomes are more positive (Fallot, 2001; Hage et al, 2003; Hodge, 2006; Koenig et al., 2001; Larson, 2003).

11. The AACC strongly believes in the time-honored and foundational ethical value of client self-determination. California Senate Bill 1172 directly and significantly undermines what is considered as a cornerstone principle in the treatment of mental health disorders. This principle can be found in the language of the ethical codes of notable professional member organizations such as the American Psychological Association (APA), the American Counseling Association (ACA), and the American Association of Marriage and Family Therapists (AAMFT), to name a few.

12. It is the AACC's position that every client seeking mental health services has the inherent right to participate in treatment that is in alignment with his/her religious beliefs and faith-based values, and furthermore, to have this right vigorously protected.

13. One of ACA's divisions, the Association for Spiritual, Ethical, and Religious Values in Counseling (ASERVIC), has developed written spiritual competencies to be incorporated into treatment protocols. In reviewing the proceedings at the 2007 ACA national conference in Detroit, Michigan, ASERVIC hosted a panel discussion of educators and clinicians. These individuals were intentionally identified as being nationally recognized for their expertise in teaching and research in the area of spirituality in counseling. The following are eight of the competencies that have particular relevance to the discussion of the effects of SB 1172.

> Competency #2 – The professional counselor recognizes that the client's beliefs (or absence of beliefs) about spirituality and/or religion are central to his or her worldview and can influence psychosocial functioning.

Competency #5 – The professional counselor can identify the limits of his or her understanding of the client's spiritual and/or religious perspective and is acquainted with religious and spiritual resources, including leaders, who can be avenues for consultation and to whom the counselor can refer.

Competency #6 – The professional counselor can identify limits of her/his understanding of a client's religious or spiritual expression, and demonstrate appropriate referral skills and generate possible referral sources.

Competency #7 – The professional counselor responds to client communications about spirituality and/or religion with acceptance and sensitivity.

Competency #8 – The professional counselor uses spiritual and/or religious concepts that are consistent with the client's spiritual and/or religious perspectives and that are acceptable to the client.

Competency #9 – The professional counselor can recognize spiritual and/or religious themes in client communication and is able to address these with the client when they are therapeutically relevant.

Competency #12 – The professional counselor sets goals with the client that are consistent with the client's spiritual and/or religious perspectives.

Competency #13 – The professional counselor is able to a) modify therapeutic techniques to include a client's spiritual and/or religious perspectives, and b) utilize spiritual and/or religious practices as techniques when appropriate and acceptable to a client's viewpoint.

14. The AACC believes, as evidenced in the language of the above listed Competencies—in particular #8 and #12—a client's spiritual and religious values are indeed valid and reasonable determinants for the focus and direction of treatment.

15. The AACC believes Senate Bill 1172 places prospective clients in an untenable double bind when receiving mental health services related to gender identity and/or sexual orientation issues, especially when their religious values may inform and direct their behavior in a manner contrary to same sex attraction. Furthermore, Senate Bill 1172 may in fact, represent actual harm to the client because it does not allow the treating practitioner to address these competing value systems, leaving the client with no means to process the potential inner conflict.

16. While acknowledging the current controversy over the implementation of sexual orientation change therapies, the general lack of conclusive research in this area, and the legitimate need for adolescents to receive competent care when addressing issues pertaining to sexual orientation, the AACC firmly believes that Senate Bill 1172 moves far beyond its original intent to protect minor clients and represents a reckless infringement on the religious liberties of anyone needing treatment.

17. The ACCC believes when a client's faith values may be in conflict with other cultural values, especially as they may pertain to the language found in Senate Bill 1172, that ultimately the client—and in the case of a minor, his/her parent or legal guardian—has the moral and ethical right to participate in and determine the appropriate course of care, including alignment with his/her relevant religious beliefs.

18. In light of the above statement, the AACC strongly believes that Senate Bill 1172 unfairly and unnecessarily discriminates against the religious liberties of the client and represents an intrusive and potentially damaging dynamic regarding the delivery of care.

I declare under penalty of perjury of the laws of the United States and California that the foregoing statements are true and accurate.

Executed this 3rd day of October, 2012.

*Eric T. Scalise*
Eric T. Scalise, Ph.D.