UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PICKUP, et al., | No. 2:12-cv-02497-KJM-EFB |
| Plaintiffs, | |
| v. | ORDER |
| EDMUND G. BROWN, JR., Governor of the State of California, in his official capacity, et al., | |
| Defendants, | |
| and EQUALITY CALIFORNIA, | |
| Intervenor-Defendant. | |

This matter is before the court on defendants' motion to dismiss plaintiffs' complaint. Defs.' Mot., ECF No. 112. Also before the court is defendants' request for judicial notice in support of the motion. Request for Judicial Notice (RJN), ECF No. 112-1. Plaintiffs oppose the motion. ECF No. 117. The court held a hearing on this matter on March 13, 2015; Daniel Schmid appeared for plaintiffs, Alexandra Gordon and Tamar Pachter appeared for defendants, and Jaime Huling-Delaye observed proceedings on behalf of defendant-intervenor. For the following reasons, the court GRANTS the motion.

/////

I.     PROCEDURAL BACKGROUND

Plaintiffs filed their complaint and motion for a preliminary injunction on October 4, 2012, seeking to enjoin Senate Bill 1172, enacted as California Business and Professions Code §§ 865, 865.1, 865.2.  Compl., ECF No. 1; Mot. for Prelim. Inj., ECF No. 3.  On December 4, 2012, this court denied plaintiffs' motion on free speech grounds because the complaint did not show a likelihood of success on the merits of any claim.  *See* Order Denying Prelim. Inj., ECF No. 80.  The court also granted Equality California's (EQCA) request to intervene.  ECF No. 81.

Plaintiffs appealed the decision on December 10, 2012, ECF No. 89, and on August 29, 2013, the Ninth Circuit affirmed this court's denial of injunctive relief and reversed in a consolidated decision a separate decision from this court that had granted relief.  *See Welch v. Brown*, 907 F. Supp. 2d 1102 (E.D. Cal. 2012), *rev'd sub nom. Pickup v. Brown*, 728 F.3d 1042 (9th Cir. 2013) and *rev'd sub nom. Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014), ECF No. 11.  Applying rational basis review, the Ninth Circuit held that "SB 1172, as a regulation of professional conduct, does not violate the free speech rights of SOCE practitioners or minor patients, is neither vague nor overbroad, and does not violate parents' fundamental rights."  *Pickup v. Brown*, 740 F.3d 1208, 1222 (9th Cir.), *cert. denied*, ___ U.S. ___, 134 S. Ct. 2871 (2014), *and cert. denied sub nom. Welch v. Brown*, ___ U.S. ___, 134 S. Ct. 2881 (2014).

Having stayed proceedings on January 29, 2013 pending the outcome of the appeal, this court lifted the stay on August 12, 2014.  ECF No. 105.  Defendants filed the instant motion to dismiss the remaining claims on November 20, 2014, which EQCA joined the next day.  ECF Nos. 112, 113.  After the motion hearing date was reset, plaintiffs filed their opposition on February 27, 2015 (ECF No. 117), and defendants replied on March 6, 2015 (ECF No. 118).  On July 24, 2015, defendants filed a notice of supplementary authority in support of their motion to dismiss.  ECF No. 122.  They provided the court with the Ninth Circuit's recent decision in *Stormans, Inc. v. Wiesman*, 794 F.3d 1064 (9th Cir. 2015), another free exercise challenge, and

/////

/////

the July 21, 2015 judgment on the pleadings entered in the related *Welch v. Brown,* Case No. 2:12-2484.[1]

## II.     FACTUAL BACKGROUND

Detailed facts are set forth in this court's order denying the motion for a preliminary injunction, ECF No. 80, and the Ninth Circuit's opinion affirming the denial and remanding for further proceedings, ECF No. 100.  The court briefly reviews the facts relevant to the instant motion here.

Plaintiffs are David Pickup, Christopher Rosik, Ph.D., Joseph Nicolosi, Ph.D., and Robert Vazzo, four California-licensed mental health providers who provide "sexual orientation change efforts" (SOCE); two non-profit organizations that promote and study SOCE, the National Association for Research and Therapy of Homosexuality (NARTH) and the American Association of Christian Counselors (AACC); and two sets of parents, Jack and Jane Doe 1 and Jack and Jane Doe 2, who are suing in their own right and as guardians ad litem of their minor children, plaintiffs John Doe 1 and John Doe 2, respectively.  Compl. ¶¶ 18–26. They challenge SB 1172, signed into law by Governor Brown on September 20, 2012. ECF No. 80 at 7, and codified at California Business & Professional Code §§ 865, 865.1, 865.2, effective January 1, 2013.  SB 1172 prohibits licensed mental health professionals in California from engaging in SOCE with persons under the age of 18.  A mental health professional is defined as a

> physician and surgeon specializing in the practice of psychiatry, a psychologist, a psychological assistant, intern, or trainee, a licensed marriage and family therapist, a registered marriage and family therapist, intern, or trainee, a licensed educational psychologist, a credentialed school psychologist, a licensed clinical social worker, an associate clinical social worker, a licensed professional clinical counselor, a registered clinical counselor, intern, or trainee, or any other person designated as a mental health professional under California law or regulation.

Cal. Bus. & Prof. Code § 865(a).

/////

---

[1] Neither party filed a notice of supplemental authority in light of the Supreme Court's decision in *Reed v. Town of Gilbert, Ariz.*, __ U.S. __, 135 S. Ct. 2218 (2015).  The court has nonetheless considered the Court's opinion, and found it to be not determinative of the issues presented here.

SOCE includes aversion and nonaversion treatments intended to "change gay men's and lesbians' thought patterns by reframing desires, redirecting thoughts, or using hypnosis, with the goal of changing sexual arousal, behavior, and orientation." ECF No. 80 at 5 (quoting ECF No. 54-1 at 30). The Legislature, in the findings supporting SB 1172, found that "California has a compelling interest in protecting the physical and psychological well-being of minors, including lesbian, gay, bisexual, and transgender youth, and in protecting its minors against exposure to serious harms caused by sexual orientation change efforts." ECF No. 80 at 10-11 (quoting SB 1172 (Findings & Decls. § 1(n)). The law does not expressly prohibit professionals from discussing SOCE with patients, from referring patients to unlicensed practitioners of change efforts, or otherwise from offering opinions on the subject of homosexuality, *Pickup*, 740 F.3d at 1215.

The complaint alleges that SB 1172 violates: (1) plaintiff therapists' right to free speech and plaintiff minors' right to receive information under the First Amendment; (2) plaintiff therapists' right to liberty of speech and the minors' right to receive information under Article I, § 2(a) of the California Constitution; (3) plaintiff parents' and minors' right to free exercise of religion; (4) parents' and minors' right to free exercise and enjoyment of religion under Article I, § 4 of the California Constitution; (5) plaintiff parents' parental rights under the First and Fourteenth Amendment; and (6) plaintiff parents' parental rights under Article I, § 7 of the California Constitution. *Id.* ¶¶ 259–337. After the Ninth Circuit's decision, plaintiffs believe the claims that remain viable are their as-applied challenges under the First and Fourteenth Amendments, as alleged in claims one and three of their complaint (Compl. ¶¶ 259–76, 296–308), and their facial challenge under the Free Exercise Clause of the First Amendment, as alleged in their third claim. *Id.* ¶¶ 296–308; Joint Status Report at 2, ECF No. 107.

III.    JUDICIAL NOTICE

Defendants request the court take judicial notice of this court's December 4, 2012 order, ECF No. 80, denying plaintiffs' motion for a preliminary injunction. RJN at 2. Judicial notice may be taken of documents filed and orders or decisions entered in federal or state court. *See Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n.1 (9th Cir. 1996) (court may

1  take judicial notice of the pleadings and court orders in earlier related proceedings).  While a
2  court need not take judicial notice in order to consider a prior order, a court may take notice of the
3  order where it is relevant and its authenticity is undisputed.  *See Shalaby v. Bernzomatic*,
4  281 F.R.D. 565, 570 (S.D. Cal. 2012), *aff'd,* 584 F. App'x 419 (9th Cir. 2014).  Finding the order
5  relevant and undisputed in its authenticity, the court grants defendants' unopposed request for
6  judicial notice of this court's previously entered order.
7  IV.     LEGAL STANDARD FOR MOTION TO DISMISS
8           Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to
9  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may
10  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged
11  under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.
12  1990).
13           Although a complaint need contain only "a short and plain statement of the claim
14  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion
15  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a
16  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting
17  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something
18  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and
19  conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting
20  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss
21  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on
22  its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the
23  interplay between the factual allegations of the complaint and the dispositive issues of law in the
24  action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).
25           In making this context-specific evaluation, this court must construe the complaint
26  in the light most favorable to the plaintiff and accept as true the factual allegations of the
27  complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "'a legal
28  conclusion couched as a factual allegation,'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v.*

*Allain*, 478 U.S. 265, 286 (1986)), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

V.     DISCUSSION

    A.     The Eleventh Amendment (All Claims)

Defendants contend all claims against Governor Brown must be dismissed because he is immune from suit under the Eleventh Amendment. While a well-established exception to immunity is carved out by *Ex Parte Young*, 209 U.S. 123, 157 (1908), defendants argue this exception is inapplicable because the Governor is not alleged to have a specific and direct connection to the enforcement or administration of SB 1172. Defs.' Mot. at 10. Plaintiffs respond they have pleaded a connection to the law's enforcement sufficient to subject the Governor to suit. Opp'n at 4-5.

States are immune from suit by plaintiffs in federal court. *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817, *amended by* 271 F.3d 910 (9th Cir. 2001). Under *Ex Parte Young*, state officers may be sued in their official capacities for prospective declaratory or injunctive relief based on their alleged violations of federal law, *see Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013), *cert. denied*, ___ U.S. ___, 135 S. Ct. 398 (2014), so long as the state official has "some connection with the enforcement of the act," *Ex parte Young*, 209 U.S. at 157. "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

Where the only asserted connection to the law is a "generalized enforcement power" to enforce the laws of California or the Governor's signing a bill into law, another court has found only a generalized connection insufficient to waive immunity. *See, e.g., Nichols v. Brown*, 859 F. Supp. 2d 1118, 1132 (C.D. Cal. 2012) (finding allegation that "[t]he Governor has the supreme executive power in the State and is responsible for the faithful execution of the laws of the State of California" is an insufficient, generalized connection). The Ninth Circuit has

1  found no connection between a state official and a challenged law where the state official lacked
2  any "enforcement power, and therefore [] has no connection to the enforcement of the challenged
3  law as required under *Ex Parte Young*." *Snoeck v. Brussa*, 153 F.3d 984, 987 (9th Cir. 1998). In
4  contrast, it has found a connection where a state officer has a specific connection to the
5  enforcement and effect of the law. *See Eu*, 979 F.2d at 704. In *Eu*, the challenged statute limited
6  the number of state judges in Los Angeles County. State officers Governor Wilson and Secretary
7  of State Eu had a duty to appoint judges and to certify subsequent elections for those positions,
8  respectively. *Id*. at 704. These duties qualified as enforcement actions because the statute was
9  "being given effect" by the officials. *Id*.

10  Based on the complaint and a plain reading of the challenged statute here,
11  Governor Brown lacks the connection to the challenged law necessary to find a waiver of his
12  sovereign immunity. The only mention of the Governor in the complaint is that he signed the bill
13  into law, and is the "Governor of the State of California and responsible for executing the laws of
14  California." Compl. ¶¶ 27, 32. This is almost identical to the language found to be insufficient in
15  *Nichols*. The statute at issue provides that its violation "shall be considered unprofessional
16  conduct and shall subject a mental health provider to discipline by the licensing entity for that
17  mental health provider." Cal. Bus. & Prof. Code § 865.2. There are no facts alleged supporting
18  an inference Governor Brown is connected at all to any enforcement or that he appoints members
19  of the mental health licensing board directly. Where his only connection to the statute is his
20  general duty to enforce California law, Governor Brown is entitled to Eleventh Amendment
21  immunity. *See Harris*, 729 F.3d at 943. The court grants the motion as to defendant Governor
22  Brown.

23  B.   Claim Three: Free Exercise (Facial)

24  Defendants argue plaintiffs' third claim (Compl. ¶¶ 296–308) must be dismissed
25  because SB 1172 is a neutral, generally applicable regulation of professional conduct that "easily
26  passes[] rational basis review."[2] Defs.' Mot. at 11–13, 15. In their complaint, plaintiffs allege

---

[2] Defendants state in their motion that "plaintiffs' Third Count that SB 1172 violates the First Amendment right to the free exercise of religion, *see* Complaint ¶¶ 309–321, must be

that SB 1172, on its face "targets . . . [p]laintiffs' sincerely held religious beliefs . . . regarding human nature, gender, ethics, morality," "will cause them a direct and immediate conflict with their religious beliefs by prohibiting them from offering, referring and receiving counseling that is consistent with their religious beliefs," and "compels them both to change those religious beliefs and to act in contradiction to them." Compl. ¶¶ 311–314. The law, plaintiffs allege, "is neither neutral nor generally applicable but rather specifically targets their religious speech and beliefs, and is viewpoint-based . . . ." *Id.* ¶ 315. Defendants argue such "conclusory allegations" do not satisfy the pleading requirements of Federal Rule of Civil Procedure 8 because they "are contradicted by a plain reading of SB 1172 and have been rejected by the Ninth Circuit [in *Welch*]." Defs.' Mot. at 14. Plaintiffs oppose, stating their claim is adequately pleaded and SB 1172 is subject to strict scrutiny, which it cannot satisfy. Opp'n at 5.

    1.  Neutral and General Applicability

    To determine the applicable standard of review, the court must consider whether SB 1172 is a neutral and generally applicable regulation of professional conduct. "[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

    As a threshold matter, plaintiffs' argument that a determination of neutrality is inappropriate on a motion to dismiss because it requires a factual determination, Opp'n at 7–8, is unavailing. *See Williams v. California*, 990 F. Supp. 2d 1009, 1021 (C.D. Cal. 2012), *aff'd,* 764 F.3d 1002 (9th Cir. 2014) (dismissing a free exercise claim where plaintiffs "have not advanced a coherent and lucid theory tying the conduct alleged in the [complaint] to a violation of the Free

---

dismissed." Those paragraphs are actually plaintiffs' fourth claim, alleging a violation of the right to free exercise under the California Constitution. *See* ¶¶ Compl. 309–21. In a footnote, defendants refer to the speech and fundamental rights claims under the California Constitution as "analytically indistinguishable from the federal claims" and say they "thus fail for the same reasons." Defs.' Mot. at 11 n.6. The court assumes defendants intended to cite to ¶¶ 296–308 in its briefing arguing dismissal of the third claim, and that defendants ask the court to apply the same analysis to dismiss the fourth claim under the California Constitution. Because plaintiffs agree the fourth claim is no longer viable, the court need not reach the merits of this argument. *See* Joint Status Report at 2, ECF No. 107.

Exercise Clause]"); *see also GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1257 (11th Cir. 2012) (*Lukumi Babalu* "reaffirms that to survive a motion to dismiss all Free Exercise Clause challenges must include allegations that the law at issue creates a constitutionally impermissible burden on a sincerely held religious belief" . . . "conclusory allegations that the [law] interferes with Plaintiffs' free exercise of religion are not sufficient to survive a motion to dismiss."). Rule 8 requires plaintiffs to plead their claims with some plausibility.

A law is neutral if it does not aim to "infringe upon or restrict practices because of their religious motivation," and if it does not "in a selective manner impose burdens only on conduct motivated by religious belief[.]" *Id*. at 533, 543. Put another way, if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral. *Id.* at 533 (citations omitted). "To determine the object of a law, we must begin with its text, for the minimum requirement of neutrality is that a law not discriminate on its face. A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id*. It is undisputed the law appears facially neutral. Opp'n at 6.

Even if a law is facially neutral, however, the court must look to the record to determine whether the law operates as a "covert suppression of particular religious beliefs." *Lukumi,* 508 U.S. at 534 (quoting *Bowen v. Roy*, 476 U.S. 693, 703 (1986)). A court may determine neutrality by considering "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history." *Lukumi*, 508 U.S. at 543. The court may consider (1) whether the regulation's burden falls, in practical terms, on religious objectors but almost no others; (2) whether the government's interpretation of the law favors secular conduct; and (3) whether the law proscribes more religious conduct than is necessary to achieve its stated ends. *Stormans Inc. v. Selecky*, 844 F. Supp. 2d 1172, 1188 (W.D. Wash. 2012) (citing *Lukumi*, 508 U.S. at 536–38).

The Ninth Circuit already has determined, in considering the law's neutrality in the free speech context, the law "does not restrain Plaintiffs from imparting information or disseminating opinions," *Pickup*, 740 F.3d at 1230, or "[p]revent mental health providers from

9

1  expressing their views to patients, whether children or adult, about SOCE, homosexuality, or any
2  other topic," *id.* at 1223.  The law's legislative history supports no inference that "in enacting the
3  bill, the Legislature sought to suppress, target, or single out the practice of any religion," but
4  rather that "the Legislature was concerned with the harm SOCE therapy causes minors regardless
5  of whether it is motivated by secular or religious beliefs." *Welch v. Brown*, 58 F. Supp. 3d 1079,
6  1086 (E.D. Cal. 2014) (decision on remand); *see also King v. Governor of the State of New*
7  *Jersey*, 767 F.3d 216, 242–43 (3d Cir. 2014) (finding neutral a similar state statute prohibiting the
8  practice of SOCE on minors).  Because the law is neutral and generally applicable, rational basis
9  review applies to plaintiffs' free exercise claim, as it did to their free speech claims.  *Miller v.*
10 *Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999).

11         The tests for "[n]eutrality and general applicability are interrelated, and . . . failure
12 to satisfy one requirement is a likely indication that the other has not been satisfied." *See Lukumi*,
13 508 U.S. at 531.  A law is not generally applicable if it, "in a selective manner[,] impose[s]
14 burdens only on conduct motivated by religious belief." *Id*. at 543.  Considering the applicable
15 factors, the factual allegations in plaintiffs' complaint do not support any inference of a lack of
16 neutrality or general applicability.[3]  The test for general applicability is similar to the standard for

---

[3] The factual allegations offered by plaintiffs as examples of how SB 1172 suppresses their religious beliefs are readily refuted by a plain reading of the statute and Ninth Circuit's decision in *Pickup*.  Plaintiffs' examples allege the law: "denies [plaintiffs] their right to prioritize their religious and moral values and their right to receive counseling consistent with those values by preventing them from receiving counseling to address the conflict," Compl. ¶ 5; "denies minors the opportunity to pursue a particular course of action that can help them address the conflicts between their religious and moral values and same-sex attractions," *id*. ¶ 10; "[mandates] that SOCE treatment options not be discussed or engaged in by licensed psychiatrists . . . psychiatrists will be violating the ethics code by imposing their own views and value judgments upon their clients," *id*. ¶ 43; prohibits "a minor client who desires the now-prohibited SOCE counseling [from] determin[ing] their own course of counseling that aligns their spiritual and moral values," *id*. ¶ 56; "[mandates] that only efforts that seek to affirm same-sex attractions are permissible in the counselor's office even if this collides with the client's religious and moral values," *id*. ¶ 66.
   The law does not prohibit the discussion of SOCE as an option, only its practice, and only by a licensed mental health professional.  Although laws "cannot interfere with mere religious belief and opinions, they may with practices." *Reynolds v. United States*, 98 U.S. 145, 166 (1878).  Plaintiffs remain free to discuss, refer, seek, and contemplate SOCE, and are not required to "affirm" same sex attractions.  The allegations that the sincerely held religious beliefs of plaintiffs Dr. Rosik and Mr. Vazzo and their clients are burdened by the requirements of SOCE

1  neutrality.  "Neutrality is not destroyed by the supposition that pharmacies whose owners have
2  religious objections [] will be burdened disproportionately."  *Stormans v. Wiesman*, 794 F.3d at
3  1077 (finding neutral and generally applicable rules that "prescribe the same conduct for all,
4  regardless of motivation").  The law applies to all mental health professionals in California.

          2.      Rational Basis

The Ninth Circuit's application of rational basis review to the free speech claim supports the finding that rational basis applies in the free exercise claim as well.  "Because . . . plaintiffs' free speech challenge . . . fails, the policy is subject only to a rational basis review in the context of the facial free exercise challenge because the policy is generally applicable, neutral, and does not regulate plaintiffs' beliefs as such.  Under that level of scrutiny, plaintiffs' free exercise claim must fail because, for the all of the reasons articulated in the context of the free speech claim, the policy is rationally related to a legitimate governmental interest."  *Jews for Jesus, Inc. v. Port of Portland, Or.*, No. CV04695HU, 2005 WL 1109698, at *15 (D. Or. May 5, 2005) *aff'd sub nom. Jews for Jesus, Inc. v. Port of Portland*, 172 F. App'x 760 (9th Cir. 2006).

As this court previously has found, and the Ninth Circuit affirmed, the law is rationally related to the interest of protecting the well-being of minors.  *See Pickup*, 740 F.3d at 1232.  That finding holds in the face of the free exercise analysis.  The court accordingly DISMISSES claim three without leave to amend.

    C.    Claims One and Three: "As-Applied" Challenge

Plaintiffs' claims one and three incorporate an as-applied challenge as well.  Joint Status Report at 2.  Defendants argue plaintiffs have not alleged a cognizable as-applied challenge because the complaint does not allege that SB 1172 has been applied to plaintiffs and/or their

---

counseling, *id*. ¶¶ 125, 163, 210, and 220, are unavailing.  *See Pickup*, 740 F.3d at 1229 ("[W]e reject the position of the *Pickup* Plaintiffs—asserted during oral argument—that even a ban on aversive types of SOCE requires heightened scrutiny because of the incidental effect on speech . . . the law allows discussions about treatment, recommendations to obtain treatment, and expressions of opinions about SOCE and homosexuality."); *see also Selecky*, 586 F.3d at 1131 ("Free Exercise Clause is not violated even though a group motivated by religious reasons may be more likely to engage in the proscribed conduct.").  The remaining allegations offered in support of this argument, *id*. ¶¶ 92, 93, 111, 112, are mere legal conclusions.

1    members, nor could it because SB 1172 was not in effect on October 4, 2012, when the complaint
2    was filed. Defs.' Mot. at 17. Defendants argue any claims that SB 1172 as applied to plaintiffs is
3    vague and overbroad, prohibits their speech, and/or discriminates against their speech on the basis
4    of content and viewpoint, have been adjudicated and are precluded by the Ninth Circuit's opinion
5    in *Pickup*. *Id.* Plaintiffs respond that the Supreme Court and numerous circuit courts have
6    maintained the justiciability of as-applied challenges prior to enforcement. Opp'n at 18-20.

7            As to whether the as-applied challenges are precluded by the Ninth Circuit's
8    affirmance following a facial challenge, the court agrees with the government. The Ninth
9    Circuit's rejection of the facial challenge to the law contemplated the precise behavior plaintiffs
10   challenge on an as-applied basis. The First Circuit in *McGuire v. Reilly*, 386 F.3d 45, 60 (1st Cir.
11   2004), found that when "plaintiffs d[id] not and cannot argue that they are different types of
12   actors, or that they are involved in a different type of fact situation, from the ones on the basis of
13   which the law was already upheld facially," an as-applied challenge "necessarily fail[s], because
14   "the fact situation that [they] are involved in here is the core fact situation intended to be covered
15   by this . . . statute, and it is the same type of fact situation that was envisioned by this court when
16   the facial challenge was denied." *See also Hoye v. City of Oakland*, 653 F.3d 835, 857–58 (9th
17   Cir. 2011) (citing this analysis with approval, finding it "instructive"). The Ninth Circuit has
18   often termed as-applied First Amendment challenges such as these as "selective enforcement"
19   challenges under the Equal Protection Clause. *See, e.g, Rosenbaum v. City and Cnty. of San*
20   *Francisco*, 484 F.3d 1142, 1152–57 (9th Cir .2007). As the name suggests, this means that the
21   law has been selectively enforced against plaintiffs in some way. No such enforcement action has
22   been alleged here.

23           To have standing to state a claim for a preenforcement challenge to a statute, a
24   plaintiff need not "first expose himself to actual arrest or prosecution" but must "allege an
25   intention to engage in a course of conduct arguably affected with a constitutional interest, but
26   proscribed by a statute," and demonstrate that "there exists a credible threat of prosecution
27   thereunder." *Babbitt v. United Farm Workers*, 442 U.S. 289, 298 (1979) ; *San Diego Cnty. Gun*
28   *Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (holding that to challenge a statute

regulating conduct, plaintiffs "must show a genuine threat of imminent prosecution," not the "mere possibility of criminal sanctions.") (internal quotation marks omitted).  An expressed "intent" to engage in conduct is insufficient: "[i]n evaluating the genuineness of a claimed threat of prosecution, [the court] look[s] to whether the plaintiffs have articulated a concrete plan to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (internal quotation omitted).  "A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." *Id*. at 1139.  Additionally, the existence of a statute does not satisfy the requirement for showing an injury-in-fact.  *Stoianoff v. State of Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983) ("The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III.")

The facts pleaded in the complaint, which predated the statute's enactment, state that plaintiffs' SOCE practice will be made illegal by SB 1172. *See, e.g*., Compl. ¶¶ 9, 138–41, 145, 169, 192, 200, 219.  In their opposition, plaintiffs state that now that SB 1172 "has gone into effect, it is unquestionable that SB 1172 is being applied against them.  As such, their pre-enforcement as-applied First Amendment challenges to SB1172 are well pleaded and well taken." Opp'n at 20.  The complaint does not allege an "articulate, concrete plan" for violating the statute, describe with any particularity how the statute will be enforced against plaintiffs, or that plaintiffs have, since the statute's enactment, experienced a genuine threat of imminent prosecution.  The court can only speculate that plaintiffs intend to continue their practices, violate the statute, and have the statute enforced against them.  But a court should "decline[ ] to entertain [an] as-applied challenge[ ] that would require [it] to speculate as to prospective facts." *Hightower v. City & Cnty. of San Francisco*, No. C-12-5841, 2013 WL 361115, at *5 (N.D. Cal. Jan. 29, 2013) (quoting *Hoye,* 653 F.3d at 859).  Plaintiffs do not state a claim for a pre-enforcement challenge.  Because plaintiffs have not amended their complaint since the statute's enactment, their as-applied claims are dismissed with leave to amend.

13

VI.     CONCLUSION

        For the foregoing reasons, defendants' motion is granted.  Plaintiffs are granted leave to amend their as-applied challenges under claims one and three.  Any amended complaint shall be filed no later than 21 days after the entry of this order.

        IT IS SO ORDERED.

DATED: September 15, 2015.

                                            UNITED STATES DISTRICT JUDGE