1  Mary E. McAlister
2  CBN 148570
3  LIBERTY COUNSEL
4  P.O. Box 11108
5  Lynchburg, VA 24506
6  Phone: (407) 875-1776
7  Facsimile: (407) 875-0770
8  Email: court@LC.org
9  *Attorney for Plaintiffs*
10
11
12            IN THE UNITED STATES DISTRICT COURT
13            FOR THE EASTERN DISTRICT OF CALIFORNIA
14                      Sacramento Division
15
16  DAVID PICKUP, *individually and on behalf of his*
17  *patients*; CHRISTOPHER H. ROSIK, PH.D.,
18  *individually and on behalf of his patients*; JOSEPH
19  NICOLOSI, PH.D., *individually and on behalf of his*
20  *patients*; ROBERT VAZZO, *individually and on behalf*
21  *of his patients*; ALLIANCE FOR THERAPEUTIC
22  CHOICE AND SCIENTIFIC INTEGRITY; AMERICAN
23  ASSOCIATION OF CHRISTIAN COUNSELORS;
24
25                      Plaintiffs,
26
27  v.                                          Case No. 2:12-cv-02497-KJM-EFB
28
29  EDMUND G. BROWN, JR., Governor of State
30  of California, *in his official capacity*, ANNA
31  M. CABALLERO, Secretary of the California
32  Business, Consumer Services, and Housing Agency,
33  *in her official capacity*; AWET KIDANE, Director of
34  California Department of Consumer Affairs, *in his*
35  *official capacity*,
36
37                      Defendants,
38
39  and
40
41  EQUALITY CALIFORNIA,
42
43
44                      Intervenor-Defendants.
45

### FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

For their Complaint against GOVERNOR EDMUND BROWN, JR., SECRETARY ANNA M. CABALLERO, and DIRECTOR AWET KIDANE, Plaintiffs, DAVID PICKUP, DR. CHRISTOPHER ROSIK, DR. JOSEPH NICOLOSI, ROBERT VAZZO, ALLIANCE FOR THERAPEUTIC CHOICE AND SCIENTIFIC INTEGRITY, and the AMERICAN ASSOCIATION OF CHRISTIAN COUNSELORS (collectively "Plaintiffs"), by and through the undersigned counsel, allege and aver as follows:

### INTRODUCTION

1. Plaintiffs bring this civil action for preliminary and permanent injunctive relief to enjoin and restrain Defendants from continuing to enforce and apply California Business and Professions Code §§ 865, 865.1, and 865.2 ("SB1172") against Plaintiffs in such a manner that violates their constitutionally protected freedoms of speech and the free exercise of their religion.

2. Plaintiffs also seek a declaration that Defendants' actions, application, and enforcement of SB1172 are unconstitutional and unlawful.

3. An actual controversy exists between the parties involving substantial constitutional issues in that the State's application and enforcement of SB1172 violates Plaintiffs' cherished constitutional freedoms under the First and Fourteenth Amendments to the United States Constitution.

### JURISDICTION AND VENUE

4. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

5. This Court has jurisdiction over Plaintiffs' claims by virtue of 28 U.S.C. §§ 1331, 1343, and 2201-02.

6.     This Court is authorized to grant Declaratory Judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Fed. R. Civ. P. 57.

7.     This Court is authorized to grant Plaintiffs' requested preliminary and permanent injunctive relief pursuant to Fed. R. Civ. P. 65.

8.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988.

9.     Venue is proper in this District by virtue of 28 U.S.C. § 1391(b), because Defendants are all situated in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District.

**PARTIES**

**PLAINTIFFS**

10.     Plaintiff David H. Pickup is a California Licensed Marriage and Family Therapist. He brings this action individually and on behalf of his clients.

11.     Plaintiff Christopher Rosik, Ph.D. is a licensed and practicing clinical psychologist licensed under the laws of California, professor of psychology, and is the former President of the National Association for Research and Therapy of Homosexuality ("NARTH"). He brings this action individually and on behalf of his clients.

12.     Plaintiff Joseph Nicolosi, Ph.D. is a clinical psychologist licensed in the State of California and is the Founder and Clinical Director of the Thomas Aquinas Psychologists Clinic in Encino, California. He brings this action individually and on behalf of his clients.

13.     Plaintiff Robert Vazzo is a California Licensed Marriage and Family Therapist. He brings this action individually and on behalf of his clients.

14.     Plaintiff Alliance for Therapeutic Choice and Scientific Integrity is a nonprofit, multi-disciplinary professional and scientific association with a branch office in Los Angeles, California and members who reside and practice in California.

15.     Plaintiff American Association of Christian Counselors ("AACC") is a nonprofit, professional, scientific association with 50,000 members located in California and throughout the country and world.

**DEFENDANTS**

16.     Defendant Edmund G. Brown, Jr. is Governor of the State of California, is responsible for executing the laws of California, and is directly responsible for appointing, directing, and supervising his cabinet secretaries, including the Secretary of the Business, Consumer Services, and Housing Agency tasked with interpreting, applying, and enforcing SB1172.

17.     Defendant Anna M. Caballero serves at the pleasure of Governor Brown as a member of his cabinet, was appointed by Governor Brown as Secretary of Business, Consumer Services, and Housing Agency, and is directly responsible for the interpreting, applying, and enforcing SB1172.

18.     Defendant Awat Kidane is the Director of the California Department of Consumer Affairs, was appointed by Governor Brown in July 2014, and is responsible for overseeing 40 regulatory agencies, including those specifically tasked with enforcing SB1172.

**FACTUAL ALLEGATIONS**

**CAL. BUS. & PROF. CODE §§ 865, 865.1, 865.2 ("SB1172")**

19.     Governor Brown signed SB1172 into law on September 29, 2012, amending California Business and Professions Code §§ 865, 865.1, 865.2.

20.     Cal. Bus. & Prof. Code § 865.1 states, "Under no circumstances shall a mental health provider engage in sexual orientation change effort with a patient under 18 years of age."

21.     Cal. Bus. & Prof. Code § 865.2 states, "Any sexual orientation change efforts on a patient under 18 years of age by a mental health provider shall be considered unprofessional conduct and shall subject a mental health provider to discipline by the licensing entity for that mental health provider."

22.     Cal. Bus. & Prof. Code § 865(a) defines a mental health provider as

a physician and surgeon specializing in the practice of psychiatry, a psychologist, psychologists assistant, intern, or trainee, a licensed marriage and family therapist, a registered psychologist, a licensed clinical social worker, an associate clinical social worker, a licensed professional clinical counselor, a registered clinical counselor, intern, or trainee, or any other person designated as a mental health professional under California law or regulation.

23.     Cal. Bus. & Prof. Code § 865(b)(1) defines sexual orientation change efforts ("SOCE") as "any practices by mental health providers that seek to change an individual's sexual orientation. This includes efforts to change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings towards individuals of the same sex."

24.     Cal. Bus. & Prof. Code § 865(b)(1) states, however, that SOCE "does not include psychotherapies that: (A) provide acceptance, support, and understanding of clients or the facilitation of clients' coping, social support, and identity exploration and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices; and (B) do not seek to change sexual orientation."

25.     State Senator Ted Lieu, the floor sponsor of SB1172, demonstrated the hostility proponents of SB1172 directed at parents and minors who have religious beliefs that view homosexuality as sinful, unnatural, and disordered by noting that the attack on a clients' decision to seek this counseling was "exactly the whole point of the bill because we don't want to let

1  parents harm their children." Kim Reyes, *Controversy Follows Efforts to Ban Gay Conversion*

2  *Therapy*,    Orange    County    Register    (Aug.    2,    2012),    *available    at*

3  http://www.ocregister.com/news/therapy-365822-parents-orientation.html.

4      26.    Senator Lieu's legislative aide also evidenced the legislature's hostility in his

5  communications with activists supporting the passage, application, and enforcement of SB1172's

6  prohibitions by explicitly stating that NARTH and the religious counseling its members offer to

7  devoutly religious people was the target. In that email, he stated explicitly, "we want to shut

8  down NARTH and their involvement with children." A copy of that email is attached hereto as

9  Exhibit A and incorporated herein.

10          **ETHICAL OBLIGATIONS OF MENTAL HEALTH PROFESSIONALS**

11      27.    General Principle E of the American Psychological Association's *Ethical*

12  *Principles of Psychologists and Code of Conduct* ("*APA Code*") includes the following:

13  "Psychologists respect the dignity and worth of all people, and the rights of individuals to

14  privacy, confidentiality, and **self-determination**." (emphasis added.)

15      28.    As currently applied and enforced, SB1172's prohibition directly interferes with

16  the right of Plaintiffs' clients to self-determination, including the right to receive counseling

17  consistent with their sincerely held religious convictions.

18      29.    Section 3.04 of the *APA Code*, "Avoiding Harm," further states, "Psychologists

19  take reasonable steps to avoid harming their clients/patients . . . and to minimize harm where it is

20  foreseeable and unavoidable."

21      30.    As currently applied and enforced, SB1172's prohibition forces Plaintiffs into a

22  catch-22 with those clients that have greatly benefitted from and sincerely desire to continue

23  benefitting from counseling that may be considered unethical by SB1172.

1    31.    Section 1(a) of the *American Psychiatric Association Guidelines for Ethical*

2    *Treatment* ("*APA Guidelines*") states, "A psychiatrist shall not withhold information that the

3    patient needs or reasonably could use to make informed treatment decisions, including options

4    for treatment not provided by the psychiatrist."

5    32.    As currently applied and enforced, SB1172's prohibition is causing Plaintiffs to

6    violate Section 1(a) of the *APA Guidelines* by forcing them to withhold information that a patient

7    reasonably could use to make informed treatment decisions.

8    33.    As currently applied and enforced, SB1172's prohibition severely restricts and

9    limits the information and discussion engaged in by licensed psychiatrists, as there is little or no

10   information being provided concerning SB1172's prohibition.

11   34.    Section 1(c) of the *APA Guidelines* states, "A psychiatrist shall strive to provide

12   beneficial treatment that shall not be limited to minimum criteria of medical necessity."

13   35.    As currently applied and enforced, SB1172's prohibition causes psychiatrists to

14   violate Section 1(c) of the *APA Guidelines* by prohibiting them from providing beneficial SOCE

15   counseling to those clients who willingly consent to and desire such counseling to alleviate their

16   unwanted same-sex sexual attractions, behaviors, or identity.

17   36.    Opinion 10.01(2) of the *American Medical Association Code of Ethics* ("*AMA*

18   *Code*") states, "The patient has the right to make decisions regarding the health care that is

19   recommended by his or her physician. Accordingly, patients may accept or refuse **any**

20   recommended medical treatment." (emphasis added).

21   37.    As currently applied and enforced, SB1172's prohibition causes medical

22   professionals to violate this provision of the code of ethics by prohibiting them from allowing

23   patients to make any decision regarding the availability and benefits of SOCE counseling.

1    38.    As currently applied and enforced, SB1172's prohibition eliminates the option of

2    patients to accept or reject SOCE counseling, even though the fundamental elements of the

3    patient-physician relationship require that the patient be provided with the full range of available

4    counseling options.

5    39.    Section A.4.b of the *American Counselor's Association Code of Ethics* ("*ACA*

6    *Code*") states, "Counselors are aware of—and avoid imposing—their own values, attitudes,

7    beliefs, and behaviors."

8    40.    Section A.11.a of the ACA Code states, "Counselors refrain from referring

9    prospective and current clients based solely on the counselor's personally held values, attitudes,

10   beliefs, and behaviors."

11   41.    As currently applied and enforced, SB1172's prohibition puts Plaintiffs in an

12   irresolvable conflict with this values-based referral prohibition.

13   42.    Plaintiffs are not permitted to make referrals concerning counseling for same-sex

14   attractions, behaviors, or identity, because this can be considered a values-based referral in

15   contradiction to other ethical requirements.

16   43.    As currently applied and enforced, SB1172's prohibition does not allow a

17   counselor to simply refer a patient to some other counselor (either licensed or unlicensed), as that

18   would force the counselor to violate other provisions of his ethical codes.

19   44.    The operative effect of the combination of SB1172's prohibition and the other

20   ethical code prohibitions on values-based referrals forces Plaintiffs into the unresolvable conflict

21   of having to provide counseling violative of their and their clients' sincerely held religious

22   beliefs or violate a provision of their ethical code or SB1172. This catch-22 places Plaintiffs into

1  an impossible situation concerning minors seeking counseling for unwanted same-sex

2  attractions, behaviors, or identity.

3      45.    As currently applied and enforced, SB1172's prohibition plainly places Plaintiffs

4  in the position of having to ignore clients' wishes or violate ethical codes by imposing the state's

5  values, attitudes, and beliefs mandated by the application of SB1172's prohibition and mandates.

6      46.    Section B.5.b of the ACA Code states, "Counselors are sensitive to the cultural

7  diversity of families and respect the inherent rights and responsibilities of parents/guardians over

8  the welfare of their children."

9      47.    Section C.5 of the ACA Code states, "Counselors do not condone or engage in

10  discrimination against prospective or current clients, students, employees, supervisees, or

11  research participants based on age, culture, disability, ethnicity, race, religion/spirituality,

12  gender, gender identity, sexual orientation . . ."

13      48.    As currently applied and enforced, SB1172's prohibition places counselors in the

14  irresolvable conflict of having to ignore the religion/spirituality, gender identity, and sexual

15  orientation of all clients who identify differently than the counseling mandated by the State's

16  current application of SB1172.

17      49.    As currently applied and enforced, SB1172's prohibition forces counselors to

18  ignore the religion/spirituality of those clients whose sincerely held religious and spiritual views

19  counsel them to live their life according to their true identity and sexual orientation.

20      50.    Principle 1.1 of the *American Association of Marriage and Family Therapists*

21  *Code of Ethics* ("AAMFT Code") states, "Marriage and family therapists provide professional

22  assistance to persons without discrimination on the basis of . . . gender, health status, religion,

23  national origin, sexual orientation, gender identity . . ."

51.     As currently applied and enforced, SB1172's prohibition currently places Plaintiffs in an irresolvable conflict between respecting the religion, sexual orientation, and gender identity of those patients seeking SOCE counseling and complying with the mandated position of SB1172 concerning religion, sexual orientation, or gender identity.

52.     Principle 1.2 of the AAMFT Code provides that all licensed Marriage and Family Therapists obtain informed consent from their clients, which generally requires that the client "has been adequately informed of significant information concerning treatment processes and procedures."

53.     As currently applied and enforced, SB1172's prohibition severely restricts the information Plaintiffs can give their minor clients about an entire course of treatment—SOCE counseling—that might benefit them and help them achieve their goals of eliminating or reducing their unwanted same-sex sexual attractions, behaviors, or identity.

54.     Principle 1.8 of the AAMFT Code provides that licensed marriage and family therapists "respect the rights of clients to make decisions."

55.     As currently applied and enforced, SB1172's prohibition prevents Licensed Marriage and Family Therapists from respecting the rights of clients to make decisions, and SB1172's denies patients the ability to decide what counseling to seek concerning sexual orientation or gender identity.

56.     Because the current application and enforcement of SB1172 has made the decision for the client, Plaintiffs are placed in an irresolvable conflict between complying with SB1172 and complying with Principle 1.8 of the AAMFT Code and other relevant provisions of the code.

57.     Section 1.11 of the AAMFT Code states that "[m]arriage and family therapists do not abandon or neglect clients in treatment without making reasonable arrangements for the continuation of treatment."

58.     The moment SB1172's prohibition went into effect, the application and enforcement of SB1172 placed Plaintiffs in the irresolvable conflict between SB1172's prohibition and the mandate of non-abandonment, as reasonable arrangements for the continuation of professional counseling for those minor clients desiring SOCE was no longer possible.

59.     Section 1.02 of *Code of Ethics of the National Association of Social Workers* ("NASW Code") provides that the clients shall have the right to self-determination and that a social worker should only seek to assist the client in achieving their goals and objectives for the counseling.

60.     As currently applied and enforced, SB1172 eliminates social workers' ability to respect the right of clients to self-determination by imposing the State's determination on the course of their counseling and mandating that only efforts to affirm same-sex attractions, behaviors, and identity are permissible in the counselor's office, even if this collides with the client's religious, spiritual, and moral values.

61.     Section 1.16 of the NASW Code states, "Social workers should take reasonable steps to avoid abandoning clients who are still in need of services. Social workers should withdraw services precipitously only under unusual circumstances, giving careful consideration to all factors in the situation and taking care to minimize possible adverse effects."

62.     The moment SB1172 become operative, the application and enforcement of SB1172's prohibition placed Plaintiffs in an irresolvable conflict between complying with

1   SB1172's prohibition and complying with the requirement that they not abandon clients in the

2   middle of counseling based on the clients' self-determined objective.

3          63.    The current application and enforcement of SB1172's prohibition has forced

4   counselors to violate this principle by mandating that certain forms of counseling be immediately

5   terminated, regardless of clients' wishes or the self-determined objective of the former clients.

6          64.    Section 4.02 of the NASW Code states, "Social workers should not practice,

7   condone, facilitate, or collaborate with any form of discrimination on the basis of race, ethnicity,

8   national origin, color, sex, sexual orientation, gender identity or expression . . . religion."

9          65.    As currently applied and enforced, SB1172's prohibition is causing Plaintiffs to

10  violate this principle by mandating that they facilitate discrimination against clients whose

11  religion, sexual orientation, and gender identity or expressions compel them to seek counseling

12  currently prohibited by SB1172.

13  **DAVID PICKUP, LMFT**

14         66.    David H. Pickup, a California resident, earned his Master of Arts in Counseling

15  Psychology from National University in Los Angeles and interned in SOCE counseling under the

16  direction of Dr. Joseph Nicolosi at the Thomas Aquinas Psychological Clinic in Los Angeles.

17         67.    Mr. Pickup is a California Licensed Marriage and Family Therapist who

18  specializes in counseling for individuals struggling with unwanted same-sex attractions,

19  behavior, or identity or gender confusion.

20         68.    Mr. Pickup is currently a member of the Alliance for Therapeutic Choice and

21  Scientific Integrity, where he serves on the Executive Committee of the Board of Directors; the

22  California Association of Marriage and Family Therapists; the American Association of

1   Christian Counselors; and the International Institute of Reorientation Therapies, where he

2   currently serves as President.

3        69.    Mr. Pickup is also an associate member of the American Psychological

4   Association.

5        70.    As a mental health professional who specializes in counseling for those minors

6   who have unwanted same-sex attractions, behaviors, or identity, and gender identity confusion,

7   Mr. Pickup regularly counsels minor clients experiencing same-sex attractions.

8        71.    Mr. Pickup has sincere religious beliefs that same-sex attractions, behaviors, and

9   identity are wrong and disordered. He also has sincere religious convictions that he should use

10  the talents that God has given him, as well as his own personal testimony of successful change,

11  to aid and assist others who wish to change, through the use of counseling to reduce or eliminate

12  their unwanted same-sex attractions, behaviors, or identity.

13       72.    Mr. Pickup has sincere religious beliefs that he must respect the religious beliefs

14  of his clients as well, and he respects and follows the directives of his clients.

15       73.    Mr. Pickup has many clients who have sincere religious beliefs that they should

16  seek counseling to reduce or eliminate their unwanted same-sex attractions, behaviors, and

17  identity, but those clients' right to self-determination and religious beliefs are prohibited under

18  SB1172's current application and enforcement.

19       74.    SB1172 has had a completely chilling effect on Mr. Pickup's counseling in

20  California, as it has targeted and discriminated against those teens and parents in California who

21  seek counseling related to unwanted same-sex attractions, behaviors, or identity.

22       75.    As currently applied and enforced, SB1172's prohibition causes Mr. Pickup to

23  violate his ethical responsibilities under the AAMFT Code, as the law's current prohibition

mandates that he ignore and discriminate in the provision of counseling to those clients whose gender, gender identity, sexual orientation, or religious beliefs compel them to seek the type of counseling currently prohibited by SB1172's application and enforcement.

76.     As currently applied and enforced, SB1172's prohibition forces Mr. Pickup into an irresolvable conflict with his ethical responsibilities under the AAMFT Code by forcing him to eliminate and terminate counseling that has had tremendously beneficial results for his clients, has aided his minor clients in achieving their religious goals and objectives in counseling, and has significantly reduced or eliminated his clients' mental health distress issues that resulted from the conflict between their religious beliefs and their unwanted same-sex attractions, behaviors, or identity.

77.     As currently applied and enforced, SB1172's prohibition forced Mr. Pickup into the precarious situation of potentially violating his ethical responsibilities under Section 1.11 of the AAMFT Code by forcing him to essentially abandon his clients whose self-determined objective was to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity.

78.     As currently applied and enforced, SB1172's prohibition has forced Mr. Pickup into an irresolvable conflict with other ethical requirements prohibiting values-based referrals, which places him in the hopeless conflict and false choice between providing the counseling mandated by the current application and enforcement of SB1172 or providing a values-based referral that would violate other ethical responsibilities.

79.     As currently applied and enforced, SB1172's prohibition places Mr. Pickup in the hopeless conflict of following his religious convictions in helping minors who struggle with unwanted same-sex attractions, behaviors, or identity to receiving counseling consistent with both his religious beliefs and those of the clients, and following the dictates of SB1172, which

1  forces both Mr. Pickup and his clients to accept the State's positions and ideology on the issue of

2  same-sex attractions, behaviors, and identity.

3       80.    Mr. Pickup is passionate about helping minor clients with unwanted same-sex

4  attractions, behaviors, or identity because of his own personal mental suffering and experience as

5  a minor, and the successful SOCE counseling he received as a minor.

6       81.    Mr. Pickup has sincerely held religious beliefs that he should use his own

7  experience to assist those minors with similar religious convictions regarding same-sex

8  attractions, behaviors, or identity.

9       82.    As a five year-old boy, Mr. Pickup was sexually molested by a male high school

10  perpetrator at least two or three times.

11       83.    Mr. Pickup considers this abuse to be a significant cause (if not the most

12  significant cause) of subsequent unwanted homosexual feelings and same-sex attractions when

13  he reached puberty.

14       84.    Mr. Pickup underwent authentic SOCE counseling, created by Dr. Joseph

15  Nicolosi, for several years.

16       85.    Mr. Pickup was never coerced into such therapy and never shamed during the

17  therapy.

18       86.    SOCE counseling helped Mr. Pickup resolve any shame for having homosexual

19  feelings.

20       87.    SOCE counseling helped Mr. Pickup greatly decrease his depression and anxiety.

21       88.    SOCE counseling helped Mr. Pickup feel secure in his male gender identity and

22  understand his needs for healthy male love, affirmation, approval, and affection.

89.     SOCE counseling helped Mr. Pickup substantially lessen and dissipate his homosexual feelings and significantly increased his attractions towards women.

90.     While Mr. Pickup's journey to complete recovery is ongoing, he is very happy with the real and major change in his sexuality that occurred as a result of the SOCE counseling that he received.

91.     Mr. Pickup believes that SOCE counseling saved his life.

92.     Mr. Pickup is suffering and will continue to suffer irreparable harm as a result of the current application and enforcement of SB 1172, as he is forced to violate his ethical obligations no matter what he does with respect to clients seeking counseling to reduce or resolve same-sex sexual attractions, and also as he is forced to violate his own sincere religious convictions regarding helping others.

93.     As currently applied and enforced, SB1172's prohibition has prohibited Mr. Pickup from exercising his sincere religious beliefs to help others and has made a substantial portion of his practice illegal. Mr. Pickup wishes to resume SOCE counseling, but risks imminent and serious professional discipline and sanctions mandated by SB1172.

94.     As currently applied and enforced, SB1172's prohibition has also caused harm to Mr. Pickup's clients, as they have been forced out of the licensed professional counseling that was helping them live according to their own sincerely held religious beliefs and values regarding human sexuality and sexual orientation.

**DR. CHRISTOPHER ROSIK**

95.     Christopher H. Rosik, Ph.D., a California resident, is a Phi Beta Kappa graduate of the University of Oregon's honors college where he received a Bachelor of Arts degree in psychology.

96.     As an undergraduate, Dr. Rosik also studied at the University of Copenhagen, Denmark.

97.     Dr. Rosik received a Master of Arts degree in Theological Studies from Fuller Theological Seminary and a Ph.D. in Clinical Psychology from the Fuller Graduate School of Psychology.

98.     Since 1988, Dr. Rosik has been licensed in California as a Clinical Psychologist and practices psychology at the Link Care Center, a religious, nonprofit foundation in Fresno, California.

99.     Since 2001, Dr. Rosik has also been on the clinical faculty of Fresno Pacific University where he teaches a psychology research practicum each year for undergraduate students.

100.    Dr. Rosik has published over 45 scholarly articles and book chapters in peer-reviewed journals, many on the subject of homosexuality and same-sex attractions.

101.    Dr. Rosik has been a member in good standing with the American Psychological Association since 1984 and with the International Society for the Study of Trauma and Dissociation since 1992.

102.    Since 1986, Dr. Rosik has been a member of the Christian Association for Psychological Studies ("CAPS") where he served on the board of directors from 1990-1993 and served as the CAPS President-Elect, President, and Past-President from 2001-2005.

103.    Dr. Rosik has also been a member of NARTH since 1999 where he has served as the NARTH President-Elect in 2011 and then served as the NARTH President.

104.    Dr. Rosik is currently a Past President and member of the Executive Committee of the Board of Directors for the Alliance for Therapeutic Choice and Scientific Integrity.

1   105. Dr. Rosik works full time as a psychologist at Link Care, working primarily with

2 adolescents, adults, and couples.

3   106. Dr. Rosik currently carries a caseload of approximately twenty-five to thirty

4 clients per week.

5   107. At any point in time, approximately 5 to 10 percent of Dr. Rosik's caseload

6 involves clients who are reporting unwanted same-sex attractions.

7   108. Of that percentage, about half of those clients are minors struggling with same-

8 sex attractions.

9   109. Dr. Rosik has sincerely held religious beliefs that homosexuality is sinful,

10 disordered, and unnatural.

11   110. Dr. Rosik also has sincerely held religious beliefs that he should use the talents

12 that God gave him to aid and assist clients who seek to live their lives consistently with their own

13 sincerely held religious beliefs and convictions.

14   111. For clients experiencing same-sex attractions, behavior, and identity, Dr. Rosik

15 conscientiously seeks to obtain and understand their goals for their treatment, including

16 understanding their religious beliefs regarding their unwanted same-sex attractions, behaviors, or

17 identity.

18   112. In some circumstances with clients who have sincerely held religious beliefs

19 concerning same-sex attractions, Dr. Rosik's treatment will often focus on helping the parents

20 understand their child's thinking, providing psycho-education about homosexuality among

21 youth, and working within the parents' religious values and belief system to encourage parents to

22 love their child and keep the lines of communication open.

1   113.   Dr. Rosik believes that helping these parents love their child while valuing their

2   own sincerely held religious beliefs is a key intervention that is unique to therapists like him.

3   114.   As currently applied and enforced, SB1172's prohibition has made a portion of

4   Dr. Rosik's practice illegal and unethical. Dr. Rosik wishes to resume SOCE counseling, but

5   risks imminent and serious professional discipline and sanctions mandated by SB1172.

6   115.   As currently applied and enforced, SB1172's prohibition has had a significant

7   chilling effect on Dr. Rosik's practice regarding minor clients with sincerely held religious

8   beliefs that homosexuality is unnatural, disordered, and sinful.

9   116.   As currently applied and enforced, SB1172's prohibition has significantly

10   restricted Dr. Rosik's ability to exercise his sincerely held religious beliefs that he should use the

11   talents God gave him to aid others regarding their unwanted same-sex attractions, behaviors, or

12   identity.

13   117.   As currently applied and enforced, SB1172's prohibition has forced Dr. Rosik to

14   decline professional services on the basis of the clients' sexual orientation and/or gender identity.

15   Prospective clients that were seeking counseling to reduce or eliminate their unwanted same-sex

16   attractions, behaviors, or identity or counseling consistent with their sincere religious convictions

17   about sexual orientation or gender identity are unable to receive it from Dr. Rosik due to

18   SB1172's application and enforcement.

19   118.   As currently applied and enforced, SB1172's prohibition has had a significant

20   negative impact on the religious beliefs of Dr. Rosik's clients and prospective clients because

21   these devoutly religious clients have essentially deselected themselves from the therapy process

22   altogether.

119.   As currently applied and enforced, SB1172's prohibition has further harmed Dr. Rosik's religious clients and prospective clients because the vague and imprecise boundaries of SB1172's application and enforcement have forced Dr. Rosik to question where the line is concerning the provision of accurate scientific information concerning sexual orientation.

120.   As currently applied and enforced, SB1172's prohibition has further harmed Dr. Rosik's religious clients and prospective clients because the vague and imprecise boundaries of SB1172's application and enforcement have restricted Dr. Rosik's ability to aid these devoutly religious clients by assisting them to navigate issues relating to unwanted same-sex attractions, behaviors, or identity apart from the single issue of change.

121.   As currently applied and enforced, SB1172's prohibition has further harmed Dr. Rosik's clients and prospective clients because these devoutly religious individuals have been forced to completely ignore competent and professional licensed mental health counselors while seeking the counseling of unlicensed and unaccountable religious counselors not covered by the application and enforcement of SB1172.

122.   As currently applied and enforced, SB1172's prohibition has further harmed Dr. Rosik's clients by forcing these devoutly religious clients to often avoid their sincerely needed mental health counseling altogether because there is not the slightest chance that they would enter into a professional counseling relationship with a gay-affirming therapist.

123.   As currently applied and enforced, SB1172's prohibition has placed Dr. Rosik in the precarious position of not knowing where the precise line is concerning SB1172's restrictions, placing him in substantial fear of unwarranted ethical complaints that can cost tens of thousands of dollars to defend even when baseless.

**DR. JOSEPH NICOLOSI**

124.     Dr. Joseph Nicolosi is a licensed psychologist in the State of California with a Ph.D. in Clinical Psychology from the California School of Professional Psychology.

125.     Dr. Nicolosi has performed extensive research on the topics of homosexuality and counseling for individuals with unwanted same-sex attractions, behaviors, or identity.

126.     Dr. Nicolosi has published numerous scholarly articles, books, and other scholarly works on SOCE counseling.

127.     Dr. Nicolosi specializes in counseling for males who struggle with unwanted same-sex attractions, behaviors, or identity.

128.     Most of Dr. Nicolosi's patients with unwanted same-sex attractions, behaviors, or identity seek to develop healthy heterosexual relationships and a reduction in their unwanted same-sex attractions, behaviors, or identity.

129.     Dr. Nicolosi has sincerely held religious beliefs that homosexuality is unnatural, disordered, and sinful, and that he should use the talents God has given him in counseling to aid and assist those individuals who seek to live their life consistent with their sincerely held religious beliefs.

130.     The majority of Dr. Nicolosi's clients who seek his counseling regarding unwanted same-sex attractions, behaviors, or identity do so because of their personal and sincerely held religious beliefs concerning same-sex attractions, behaviors, or identity.

131.     Dr. Nicolosi has had numerous clients succeed in eliminating or reducing their unwanted same-sex attractions and developing sexual or romantic attractions towards women.

132.     Dr. Nicolosi's counseling with those experiencing unwanted same-sex attractions, behavior, or identity involves discussions concerning the nature and cause of their unwanted

1   same-sex sexual attractions, the extent of these attractions, assistance in understanding

2   traditionally, gender-appropriate behaviors and characteristics, and assistance in fostering and

3   developing those gender-appropriate behaviors and characteristics.

4        133.   Even prior to the application and enforcement of SB1172's prohibitions, Dr.

5   Nicolosi had some clients who decided that they wanted to retain their same-sex attractions, but

6   reported that SOCE counseling helped them to understand the nature of their homosexual

7   identity and were able to better cope with that identity after SOCE counseling.

8        134.   As currently applied and enforced, SB1172's prohibition has caused substantial

9   and irreparable harm to Dr. Nicolosi's practice by making a large portion of his practice illegal

10  and by restricting Dr. Nicolosi's ability to exercise his sincere religious convictions to aid those

11  individuals who seek to live their lives according to the dictates of their faith. Dr. Nicolosi

12  wishes to resume SOCE counseling, but risks imminent and serious professional discipline and

13  sanctions mandated by SB1172.

14       135.   As currently applied and enforced, SB1172's prohibition has placed Dr. Nicolosi

15  in the unavoidable and irresolvable conflict between the requirements of the APA Code of Ethics

16  and complying with the prohibitions of SB1172.

17  **ROBERT VAZZO, LMFT**

18       136.   Robert Vazzo is a California Licensed Marriage and Family Therapist.

19       137.   He received a Master of Marriage and Family Therapy degree from the University

20  of Southern California in 2004.

21       138.   Mr. Vazzo is also a member of the Alliance for Therapeutic Choice and Scientific

22  Integrity, the California Association of Marriage and Family Therapists, and is the Treasurer for

23  the International Institute of Reorientation Therapies.

139.    Prior to beginning his own practice, Mr. Vazzo interned under the direction of Plaintiff, Dr. Joseph Nicolosi, at the Thomas Aquinas Psychological Clinic in Los Angeles, California.

140.    Mr. Vazzo now specializes in counseling minors with unwanted same-sex attractions and practices in the areas of unwanted same-sex attractions, pedophilia, hebephilia, ephebolphilia, and transvestic fetishism.

141.    In Mr. Vazzo's practice, the clients that seek counseling concerning unwanted same-sex attractions, behaviors, or identity do so based on their sincerely held religious belief that homosexuality is sinful, unnatural, and against the fundamental tenets of their faith.

142.    Mr. Vazzo has sincerely held religious beliefs that homosexuality is unnatural, sinful, and disordered, and that he should use the talents God gave him to assist minors and other clients in living their lives according to their sincere religious convictions.

143.    Mr. Vazzo believes that SB1172 essentially condones child abuse because many of his minor clients that seek SOCE counseling and struggle with unwanted same-sex attractions do so because of past abuse or trauma. SB1172 precludes Mr. Vazzo from openly exploring such abuse or trauma with his clients, with a view on healing and moving beyond those experiences.

144.    As currently applied and enforced, SB1172's prohibition is harming Mr. Vazzo's clients and prospective clients by placing them at significant risk of becoming depressed, anxious, confused, hopeless, and even suicidal because of the prohibitions on the counseling for unwanted same-sex attractions, behaviors, or identity that has helped them conform their lives to the teachings and dictates of their religious beliefs.

145.    As currently applied and enforced, SB1172's prohibition is causing Mr. Vazzo and his clients and prospective clients irreparable injury and harm by forcing them to elevate the

1   ideology of the State concerning same-sex attractions, behaviors, or identity over that of their

2   own sincerely held religious beliefs.

3   146.   As currently applied and enforced, SB1172's prohibition is causing irreparable

4   injury to Mr. Vazzo in that it has made a substantial portion of his practice with clients with

5   unwanted same-sex attractions, behaviors, or identity illegal and unethical. Mr. Vazzo wishes to

6   resume SOCE counseling, but risks imminent and serious professional discipline and sanctions

7   mandated by SB1172.

8   147.   Prior to the enforcement and application of SB1172, Mr. Vazzo often received

9   unsolicited feedback from his clients, some of whom have made statements such as: "this

10   therapy really works," "I'm so happy I found your therapy," and "I know exactly what caused

11   my unwanted same-sex attractions now."

12   148.   As currently applied and enforced, SB1172's prohibition is causing Mr. Vazzo

13   irreparable harm by forcing him into the irresolvable position and conflict of either complying

14   with SB1172's mandated counseling or complying with the requirement of other ethical

15   prohibitions on imposing his values or coercing clients into a particular type of counseling.

16   149.   As currently applied and enforced, SB1172's prohibition prevents Mr. Vazzo

17   from exercising his sincerely held religious beliefs that he should use his God-given talents to aid

18   minors who wish to live their lives according to their faith and has forced him to elevate and

19   impose the State's position on same-sex attractions, behaviors, and identity.

20   **ALLIANCE FOR THERAPEUTIC CHOICE AND SCIENTIFIC INTEGRITY**

21   150.   The Alliance for Therapeutic Choice and Scientific Integrity ("Alliance") is a

22   multi-disciplinary professional and scientific organization dedicated to preserving the right of

23   individuals to obtain services of a therapist who honors their values, advocating for integrity and

1  objectivity in social science research, and ensuring that competent licensed, professional

2  assistance is available for persons who experience unwanted homosexual (same-sex) attractions.

3      151.   The Alliance is comprised of practitioners, scholars, and researchers from many

4  fields of the mental health and medical arts and sciences, as well as educational, pastoral, legal,

5  and other community leaders and laypersons who are united in this shared organizational

6  commitment.

7      152.   The Alliance consists of several divisions, including the Public Education and

8  Client Rights Division; the Medical Division; the Family, Faith, and Ethics Division; and the

9  NARTH Institute, which includes the Clinical Division and Research Division.

10      153.   The Alliance currently has a branch office in Los Angeles, California and has

11  members in California and elsewhere in the United States.

12      154.   Alliance members in and outside of California currently have clients that seek

13  counseling concerning unwanted same-sex attractions, behaviors, and identity or gender identity

14  confusion.

15      155.   As currently applied and enforced, SB1172's prohibition is currently prohibiting

16  many Alliance members and their clients from providing and receiving counseling concerning

17  same-sex attractions, behaviors, or identity that are consistent with their sincerely held religious

18  convictions.

19      156.   The majority of the clients of Alliance members seek counseling from Alliance

20  members because of their sincerely held religious beliefs that homosexuality is unnatural, sinful,

21  and disordered.

22      157.   Many of the Alliance professional members provide counseling concerning

23  unwanted same-sex attractions, behaviors, or identity because of their sincere religious beliefs

1   that homosexuality is unnatural, sinful, and disordered, and also because of their sincere religious

2   beliefs that they should use the talents God gave them to assist minors and others to live their

3   lives consistently with the dictates of their faith.

4   158.   As currently applied and enforced, SB1172's prohibition has made a substantial

5   portion of many Alliance members' practices illegal and unethical. Alliance members in

6   California wish to resume SOCE counseling, but risk imminent and serious professional

7   discipline and sanctions mandated by SB1172.

8   159.   As currently applied and enforced, SB1172's prohibition has forced many

9   Alliance members to violate their sincerely held religious beliefs regarding counseling for

10   individuals with unwanted same-sex attractions, behaviors, or identity by forcing them to elevate

11   the State's message concerning same-sex attractions over their own religious convictions.

12   160.   As currently applied and enforced, SB1172's prohibition has placed numerous

13   Alliance members in an irresolvable conflict between abiding by their sincere religious

14   convictions or following the dictates of SB1172.

15   161.   As currently applied and enforced, SB1172's prohibition has placed numerous

16   Alliance members in fear of losing their licenses under a vague and imprecise standard

17   concerning the contours of SB1172's prohibitions.

18   **AMERICAN ASSOCIATION OF CHRISTIAN COUNSELORS**

19   162.   AACC is an international nonprofit professional scientific organization with

20   50,000 members representing the full spectrum of mental health professionals.  AACC has many

21   members in California.

22   163.   AACC's mission is to equip its members with distinctively Christian and

23   clinically sound psycho-educational resources and services that address the whole person and

1   which help individuals move toward personal wholeness, interpersonal competence, mental

2   stability, and spiritual maturity.

3       164.   AACC seeks to encourage and support Christian counseling worldwide;

4   disseminate information, educational resources, and counseling aids; stimulate interaction and

5   mutual growth between mental health practitioners; advocate for the balanced integration of

6   counseling and psychological principles with theology; inspire and offer the highest levels of

7   training and continuing education; and promote ethical practice, integrity, sound research, and

8   excellence in the delivery of professional and pastoral services.

9       165.   AACC's members adhere to the time-honored and foundational ethical value of

10  client self-determination. AACC's members regard self-determination as a cornerstone principle

11  in the treatment of mental health disorders as found in the language of the ethical codes of

12  notable professional member organizations such as the American Psychological Association

13  (APA), the American Counseling Association (ACA), and the American Association of Marriage

14  and Family Therapists (AAMFT).

15      166.   AACC's members follow the ethical construct that every client seeking mental

16  health services has the inherent right to participate in treatment that is in alignment with his/her

17  religious beliefs and faith-based values, and furthermore, to have this right vigorously protected.

18  This ethical construct is severely undermined when members are prohibited from utilizing or

19  even discussing particular types of therapeutic treatment.

20      167.   AACC's members adhere to the construct that when a client's faith values may be

21  in conflict with other cultural values, such as those expressed by the Legislature in SB 1172, that

22  ultimately the client—and in the case of a minor, his/her parent or legal guardian—has the moral

1   and ethical right to participate in and determine the appropriate course of care, including

2   alignment with his/her relevant religious beliefs.

3        168.   As currently applied and enforced, SB1172's prohibition places AACC members

4   in the irresolvable conflict between following their religious beliefs or following SB1172.

5        169.   As currently applied and enforced, SB1172's prohibition forces AACC members

6   into an unresolvable situation of violating the provisions of the ACA Code prohibiting values-

7   based referrals or violating the provisions of SB1172.

8        170.   As currently applied and enforced, SB1172's prohibition forces AACC members

9   into an unresolvable situation of violating the ACA Code provision prohibiting counselors from

10  imposing their own values, if they comply with SB1172 and impose the values the State

11  mandates concerning same-sex attractions, behaviors, or identity.

12       171.   As currently applied and enforced, SB1172's prohibition has forced many AACC

13  members to violate their sincerely held religious beliefs regarding counseling for individuals

14  with unwanted same-sex attractions, behaviors, or identity by forcing them to elevate the State's

15  message concerning same-sex attractions over their own religious convictions.

16       172.   As currently applied and enforced, SB1172's prohibition has placed numerous

17  AACC members in an irresolvable conflict between abiding by their sincere religious

18  convictions or following the dictates of SB1172. AACC members in California wish to resume

19  SOCE counseling, but risk imminent and serious professional discipline and sanctions mandated

20  by SB1172.

21       173.   As currently applied and enforced, SB1172's prohibition has placed numerous

22  AACC members in fear of losing their licenses under a vague and imprecise standard concerning

23  the precise contours of SB1172's prohibition.

### PLAINTIFFS' REQUESTS FOR CLARIFICATION ON SB1172

174.    Plaintiffs Pickup, Vazzo, and others inquired with the California Board of Behavioral Sciences ("BBS"), a division of Secretary Caballero's Business, Consumer Affairs, and Housing Agency, concerning the specific application and enforcement of SB1172, but were ignored in their requests for clarification and understanding.

175.    On October 27, 2014, Plaintiffs wrote a letter to the BBS, asking for the State to clarify some of the vagueness and imprecision that was inherent in SB1172 and requesting guidance on how certain practices and counseling would be treated. A copy of that letter is attached hereto as Exhibit B and incorporated herein.

176.    Plaintiffs requested clarification on the issue of counseling regarding sexual orientation change. Specifically, Plaintiffs wrote,

> The law as written appears to us to have some inconsistency, for which we seek your legal and professional counsel. On the one hand we are not to seek sexual orientation change but at the same time "provide acceptance, support and understanding of clients." How do we provide such acceptance and support to clients who come to us with a desire to reduce their unwanted same-sex attractions and increase opposite-sex attractions when we are at the same time being required by law to tell them we cannot assist them in their goals? Such a response is unlikely to be experienced by these clients as a supportive and understanding approach to their concerns.

177.    Plaintiffs also noted,

> A further concern we have has to do with the potential for spontaneous diminution of same-sex attractions during psychotherapy. We have occasionally witnessed such changes in the context of interventions not explicitly intended to address sexual orientation, such as those involved in processing affect related to trauma or promoting relational self-efficacy, especially in terms of resolution of gender identity inferiority. We are uncertain whether we could be liable under this law for such spontaneous changes in same-sex attractions should the client decide to report this kind of therapeutic experience as being a violation of SB1172.

178.    Plaintiffs also noted that, as it is currently being enforced and applied, SB1172 places counselors in a precarious position:

while we are committed to client autonomy and self-determination, we do not want to violate California law. . . . Therefore, we are asking for guidance from the BBS to assist licensed practitioners in clarifying specifically which therapeutic intervention are acceptable and which are unacceptable for us to employ with these clients as well as the liability we may assume for spontaneous reductions in clients' same-sex attractions.

179.    The California BBS, however, largely ignored any requests for clarification. In a brief response, the BBS essentially restated the exact language of SB1172 and offered no comment, suggestions, clarification, or explanation as to any of its licensed professionals' concerns. A copy of the BBS response letter is attached hereto as Exhibit C and incorporated herein.

180.    On December 15, 2014, Plaintiffs again wrote to the BBS to seek further clarification concerning some of the vague provisions and vague interpretation, application, and enforcement of SB1172. A copy of that letter is attached hereto as Exhibit D and incorporated herein.

181.    In that letter, Plaintiffs reiterated their professional concerns for client safety and emotional well being, and noted that the inquiry was aimed at understanding the parameters and boundaries of SB1172 and the State's application and enforcement of its prohibitions.

182.    Specifically, Plaintiffs requested clarification concerning

how to counsel a minor who will experience what will be a significant emotional and psychological dissonance when we inform them that her or she will need to completely accept their homosexuality, which is something that conflicts with their religious beliefs. We need to show tremendous care and conscience when deadline with people of faith, which is consistent with the published ethical principals of our profession. What does the BBS suggest or advise when faced with children who must experience what will be the necessary requirements of SB1172.

183.    To this date, Plaintiffs have never received any response or follow up from the licensing entity tasked with enforcing and applying SB1172, and Plaintiffs have been left to

1   guess at the meaning of SB1172 and question how it will be enforced and applied in certain

2   situations.

3        184.    Plaintiff Rosik separately inquired about the precise implications of SB1172 from

4   the California Board of Professional Psychology. A copy of his letter is attached hereto as

5   Exhibit E and incorporated herein.

6        185.    Plaintiffs expressed their concerns that some of the statements in SB1172

7        appear hard to reconcile for such clients who wish to pursue the possibility of change as a
8        therapy goal and are assessed to be genuinely making an autonomous decision in this
9        regard. I would greatly appreciate your clarification about this matter. On the one hand, I
10       am not to speak in a manner that could be perceived as promoting change. Yet, on the
11       other hand, I am told to 'provide acceptance, support, and understanding of clients.' How
12       do I provide such acceptance and support to clients who come to me with a desire to
13       reduce their unwanted same-sex attractions and behaviors and increase their opposite-sex
14       attractions and behaviors when I am at the same time being required by law to tell them I
15       cannot assist them in their goals? Such a response is unlikely to be experienced by these
16       clients as a supportive and understanding approach to their concerns.

17

18       186.    The letter continued,

19

20       A further concern I have has to do with the potential for spontaneous diminution of same-
21       sex attractions during psychotherapy.  I have occasionally witnessed such changes in the
22       context of interventions not explicitly intended to address sexual orientation, such as
23       those involved in processing affect related to trauma or promoting relational self-efficacy.
24       I am uncertain whether I could be liable under this law for such spontaneous changes in
25       same-sex attractions should the client decide to report this kind of therapeutic experience
26       as being a violation of SB1172. I would greatly appreciate it if you could clarify this
27       matter for me as well?

28

29       187.    The letter concluded by noting that Plaintiffs believe SB1172's current

30  application and enforcement "places [them] in a precarious position" by subjecting them to loss

31  of their professional licenses without providing any clarification concerning some of the vague

32  applications.

33       188.    Plaintiffs then stated they were "asking you for guidance in clarifying specifically

34  which therapeutic interventions are acceptable and which are unacceptable for [Plaintiffs] to

1  employ with these adolescent clients as well as he liability [Plaintiffs] might incur for

2  spontaneous reduction in these clients same-sex attractions and behaviors."

3  189.   Plaintiff Rosik sent a copy of the same letter to the California Board of

4  Psychology inquiring about the same issues and seeking clarification on the law's imprecise

5  application and enforcement. A copy of that letter is attached hereto as Exhibit F and

6  incorporated herein.

7  190.   Plaintiffs' requests for clarification were largely ignored, and the State refused to

8  provide any guidance concerning SB1172's application and enforcement. A copy of the State's

9  response letter is attached hereto as Exhibit G and incorporated herein.

10  191.   In that letter, counsel for the Department of Consumer Affairs stated that the State

11  "must respectfully decline [Plaintiffs'] request. As counsel for the Board, we are bound to

12  provide legal advice solely to them on an issue within their purview. For guidance on the

13  implications of SB1172 on your practice we recommend that you engage private legal counsel or

14  a professional association."

15  192.   Plaintiffs did not request legal representation from the Board's counsel, but

16  instead merely sought clarification from the government officials tasked with applying and

17  enforcing SB1172, as those are the only people capable of providing the clarification Plaintiffs

18  sought.

19  193.   Plaintiffs' inquiries, however, were completely ignored by the government

20  officials capable of explaining and assisting its licensed professionals in understanding the

21  contours and boundaries of the State's professional regulations.

194.    Plaintiffs nevertheless inquired of the California Psychologist Association who merely stated that the place to obtain clarification on the precise application, interpretation, and enforcement of SB1172 rested with the California Board of Psychology.

195.    Despite the imprecision inherent in some the application, enforcement, and interpretation of SB1172, Defendants have refused to address or even discuss Plaintiffs' justified concerns relating to meaning and application of certain provisions in SB1172.

196.    Plaintiffs have been left to guess at the boundaries and the meaning of SB1172's provisions, and have been forced to guess as to how certain prohibitions will be interpreted, applied, and enforced by the government. This has had a chilling effect on Plaintiffs' practices.

**COUNT I – VIOLATION OF PLAINTIFFS' RIGHT TO FREE SPEECH**

197.    Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 196.

198.    The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the state through the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' freedom of speech and prohibits the imposition of vague and imprecise laws.

199.    As currently applied and enforced, SB1172 mandates counselors espouse only one view in the counseling context, concerning same-sex attractions, behaviors, and identity and targets all other views for suppression.

200.    As currently applied and enforced, SB1172 is unconstitutionally vague.

201.    As currently applied and enforced, SB1172 unconstitutionally forces Plaintiffs to guess as to the precise meaning of SB1172.

202.   As currently applied and enforced, SB1172 unconstitutionally leaves Plaintiffs to guess as to the precise application of SB1172.

203.   As currently applied and enforced, SB1172 unconstitutionally leaves Plaintiffs to differ and guess at to SB1172's application.

204.   As currently applied and enforced, SB1172 is not supported by a compelling government interest.

205.   As currently applied and enforced, SB1172 is not the least restrictive means to accomplish any permissible government purpose sought to be served.

206.   As currently applied and enforced, SB1172 does not leave open ample alternative channels for communication.

207.   As currently applied and enforced, SB1172 is not supported by a legitimate government interest.

208.   As currently applied and enforced, SB1172 is not narrowly tailored to accomplish any government purpose sought to be served.

209.   As currently applied and enforced, SB1172 is irrational, unreasonable, and imposes irrational and unjustifiable restrictions on Plaintiffs' counseling.

210.   As currently applied and enforced, SB1172 has caused, is causing, and will continue to cause Plaintiffs to suffer irreparable harm and injury.

211.   Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of their most cherished liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT II – VIOLATION OF THE PLAINTIFFS' RIGHT TO FREE EXERCISE OF RELIGION

212.   Plaintiffs reiterate and adopt each and every allegation in the preceding paragraphs numbered 1 through 196.

213.   The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

214.   Plaintiffs have sincerely held religious beliefs that same-sex attractions, behaviors, or identity are wrong, unnatural, and disordered, and that they should use the talents God gave them to assist those who struggle with such attractions to live their lives according to the dictates of their faith.

215.   Plaintiffs' clients and their families have sincerely held religious beliefs that same-sex attractions, behaviors, or identity are wrong, unnatural, and disordered, and that they should seek professional counseling from those competent to provide it to align their sexual attractions, behaviors, and identity to their sincerely held religious beliefs.

216.   Plaintiffs and the members of the Plaintiff Associations also have sincerely held religious beliefs to provide counsel and assistance to their clients who seek such counsel in order to honor their clients' right to self-determination and to freely exercise their own sincerely held religious beliefs to counsel on the subject matter of same-sex attractions, behaviors, or identity from a religious viewpoint that aligns with their religious beliefs and those of their clients.

217.   As currently applied and enforced, SB1172 is targeting Plaintiffs' and their clients' religious beliefs regarding human nature, gender, ethics, morality, and SOCE counseling, which are informed by the Bible and constitute central components of their faith.

218.    As currently applied and enforced, SB1172 causes Plaintiffs and their clients a direct and immediate conflict with their religious beliefs by prohibiting them from offering, referring, and receiving counseling that is consistent with and required by their religious beliefs.

219.    As currently applied and enforced, SB1172 is impermissibly burdening Plaintiffs' and their clients' sincerely held religious beliefs and is placing them in an irresolvable conflict between those religious convictions and the dictates of SB1172.

220.    As currently applied and enforced, SB1172 is impermissibly forcing Plaintiffs and their clients to choose between acting and living according to the dictates of their sincerely held religious convictions and following the dictates of SB1172.

221.    As currently applied and enforced, SB1172 places substantial pressure and a substantial burden on Plaintiffs' and their clients' religious beliefs.

222.    As currently applied and enforced, SB1172 represents a religious gerrymander.

223.    As currently applied and enforced, SB1172 has unconstitutionally conditioned state licensing on the Plaintiffs and the members of Plaintiff Associations by requiring them to abandon their clearly established right to free exercise of religion and belief to obtain the state's license.

224.    As currently applied and enforced, SB1172 is neither neutral nor generally applicable.

225.    No compelling interest justifies the burdens that the State's current application and enforcement of SB1172 imposes upon Plaintiffs and their clients.

226.    Even if there was a compelling interest to justify the State's current application and enforcement of SB1172, the current application and enforcement is not the least restrictive means to accomplish any permissible government purpose sought to be served.

227.    As currently applied and enforced, SB1172 is irrational and unreasonable and imposes unjustifiable restrictions on Plaintiffs' exercise of their sincerely held religious beliefs.

228.    As currently applied and enforced, SB1172 has caused, is causing, and will continue to cause Plaintiffs and their clients to suffer undue and actual hardship and irreparable injury.

229.    Plaintiffs have no other adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.    That this Court issue preliminary and permanent injunctive relief, enjoining Defendants, together with their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, from enforcing and applying SB1172 in a manner that obstructs Plaintiffs from exercising their constitutional rights, and further providing that:

i.    Defendants will not apply and enforce SB1172 is such a vague and imprecise manner that places Plaintiffs and their clients in the impermissible position of having to guess at the meaning and precise contours of SB1172's prohibitions;

ii.    Defendants will not apply and enforce SB1172 in any manner to prohibit Plaintiffs and their clients from seeking and receiving counsel consistent with their sincerely held religious beliefs concerning same-sex attractions, behaviors, or identity; and

1       iii.    Defendants will not apply or enforce SB1172 in any manner to place

2   Plaintiffs and their clients in an irresolvable conflict between their religious beliefs and the

3   mandates of SB1172;

4       B.    That this Court render Declaratory Judgment declaring Defendants' application

5   and enforcement of California Business and Professions Code §§ 865, 865.1, and 865.2 against

6   Plaintiffs and their clients to be unconstitutional and unlawful under the First and Fourteenth

7   Amendments to the United States Constitution, and further declaring that:

8       i.    Defendants' application and enforcement of SB1172 violated Plaintiffs'

9   First and Fourteenth Amendment rights by imposing a vague and imprecise law against them

10   leaving them to differ as to its meaning and differ as to its applications; and

11       ii.    Defendants' application and enforcement of SB1172 violated Plaintiffs'

12   and their clients' First and Fourteenth Amendment rights to the free exercise of their religion by

13   placing them in an irresolvable conflict between their sincerely held religious beliefs and the

14   mandates of SB1172 and applying SB1172's mandates in a manner that is neither neutral nor

15   generally applicable;

16       C.    That this Court adjudge, decree, and declare the rights and other legal relations

17   with the subject matter here in controversy so that such declaration shall have the force and

18   effect of final judgment;

19       D.    That this Court retain jurisdiction of this matter for the purpose of enforcing this

20   Court's order;

21       E.    That this Court award Plaintiffs and their clients the reasonable costs and

22   expenses of this action, including attorney's fees, in accordance with 42 U.S.C. § 1988; and

1         f.       That this Court grant such other and further relief as this Court deems equitable

2    and just under the circumstances.

3         Dated: October 28, 2015

4                                           Respectfully submitted,

5

6                                            /s/ Daniel J. Schmid
7                                            Mary. E. McAlister
8                                            California Bar No. 148570
9                                            Mathew D. Staver*
10                                           Rena M. Lindevaldsen*
11                                           Daniel J. Schmid*
12                                           LIBERTY COUNSEL
13                                           P.O. Box 11108
14                                           Lynchburg, VA 24502
15                                           Phone: (407) 875-1776
16                                           Fax: (407) 875-0770
17                                           Email: court@LC.org

18

19                                           *Attorneys for Plaintiffs*
20                                           *Admitted Pro Hac Vice

21

22

23

24

25

26

27

28

29

30

31

32

33

34

35

36

37

38

39

40

41

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of October, 2015, I caused the foregoing to electronically filed with this Court's electronic filing system. Service will be effectuated via this Court's electronic notice and service system.

/s/ Daniel J. Schmid
Daniel J. Schmid
*Attorney for Plaintiffs*